Docket No.  25-cv-06667 (AKH)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

R.M., by and through next friend Elfego Maldonado Estrada, and
A.D., by and through next friend Kadijah Hutchinson-McLean, on
behalf of themselves and all others similarly situated,

Plaintiffs,

- against -

NEW YORK STATE OFFICE OF MENTAL HEALTH; ANN
MARIE T. SULLIVAN, in her official capacity as the Commissioner
of the New York State Office of Mental Health; the NEW YORK
CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE;
MICHELLE MORSE, in her official capacity as the Commissioner of
the New York City Department of Health and Mental Hygiene; and
NEW YORK CITY HEALTH AND HOSPITALS CORPORATION,

Defendants.

**DEFENDANTS THE NEW YORK CITY DEPARTMENT OF
HEALTH AND MENTAL HYGIENE, MICHELLE MORSE, IN
HER OFFICIAL CAPACITY AS THE COMMISSIONER OF
THE NEW YORK CITY DEPARTMENT OF HEALTH AND
MENTAL HYGIENE, AND NEW YORK CITY HEALTH AND
HOSPITALS CORPORATION MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS**

***MURIEL GOODE-TRUFANT***
*Corporation Counsel of the City of New York*
*Attorney for Defendants the New York City Department of Health
and Mental Hygiene, Michelle Morse, in her official capacity as
the Commissioner of the New York City Department of Health and
Mental Hygiene, and New York City Health and Hospitals
Corporation*
100 Church Street
New York, N.Y. 10007

*Of Counsel: Kendra Elise Riddleberger*
Tel: (212) 356-4377

*Ann-Marie Tesar*
Tel: (212)-356-1106

# <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

TABLE OF AUTHORITIES .................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

FACTS .................................................................................................................. 3

LEGAL STANDARDS ........................................................................................ 5

      A.  Dismissal under Rule 12(b)(1) ............................................................ 5

      B.  Dismissal under Rule 12(b)(6) ............................................................ 6

ARGUMENT

    POINT I

      PLAINTIFFS LACK STANDING AS THEY CANNOT SHOW CAUSATION OR REDRESSABILITY ................................................................... 8

      A.  Plaintiffs Fail to Show Causation ........................................................ 8

      B.  Plaintiffs Fail to Show Redressability ................................................. 9

    POINT II

      PLAINTIFFS LACK SUBJECT MATTER JURISDICTION PURSUANT TO THE ROOKER-FELDMAN DOCTRINE ....................................... 11

    POINT III

      PLAINTIFFS HAVE FAILED TO PLEAD A CLAIM PURSUANT TO THE ADA AND REHAB ACT AGAINST MUNICIPAL DEFENDANTS ................. 13

      A.  Reasonable Accommodation Claim ..................................................... 13

      B.  Integration Mandate Claim ................................................................. 16

CONCLUSION .................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                           <u>Pages</u>

*Arar v. Ashcroft*,
    585 F.3d 559 (2d Cir. 2009)................................................................................7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................7, 8

*Atuahene v. City of Hartford*,
    10 F. App'x 33 (2d Cir. 2001) ................................................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................6, 7

*Chevron Corp. v. Donziger*,
    833 F.3d 74 (2d Cir. 2016)................................................................................8

*Cortlandt St. Recovery Corp. v. Hellas Telecomms.*,
    790 F.3d 411 (2d Cir. 2015)................................................................................5, 8, 9

*Davis v. Shah*,
    821 F.3d 231 (2d Cir. 2016)................................................................................16

*Dhinsa v. Krueger*,
    917 F.3d 70 (2d Cir. 2019)................................................................................6, 8, 9

*Doe v. Pfrommer*,
    148 F.3d 73 ................................................................................14, 15, 16

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
    544 U.S. 280 (2005)................................................................................11

*Ferro v. Ry. Express Agency, Inc.*,
    296 F.2d 847 (2d Cir. 1961)................................................................................7

*Fulton v. Goord*,
    591 F.3d 37 (2d Cir. 2009)................................................................................14

*FW/PBS, Inc. v. City of Dallas*,
    493 U.S. 215 (1990)................................................................................6

*Gleason v. Scoppetta*,
    566 F. App'x 65 (2d Cir. 2014) ................................................................................8

*Greene v. City of New York*,
    725 F. Supp. 3d 400 (S.D.N.Y. 2024)................................................................................14, 15

**Cases**                                                                                                  **Pages**

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009)...................................................................................14

*Holblock v. Albany County Bd. of Elections*,
    422 F.3d 77 (2d Cir. 2005)...................................................................................12

*James v. New York*,
    2013 U.S. Dist. LEXIS 64579 (E.D.N.Y. Mar. 6, 2013) ........................................12

*Lerner v. Fleet Bank, N.A.*,
    318 F.3d 113 (2d Cir. 2003)....................................................................................8

*Linda R. S. v. Richard D.*,
    410 U.S. 614 (1973)................................................................................................9

*Lovell v. Consol. Edison Co. of N.Y.*,
    758 F. App'x 222 (2d Cir. 2019) ............................................................................9

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)............................................................................................8, 9

*Maccharulo v. New York State Dep't of Corr. Servs.*,
    2010 U.S. Dist. LEXIS 73312 (S.D.N.Y. July 21, 2010) ...........................14, 15, 16

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)....................................................................................6

*Malik v. Meissner*,
    82 F.3d 560 (2d Cir. 1996)......................................................................................6

*In re Matthew P. v. Neifeld*,
    280 Misc. 3d 950 (Sup. Ct., Putnam Cnty, Sept. 5, 2023).....................................17

*McKithen v. Brown*,
    626 F.3d 143 (2d Cir. 2010)..................................................................................12

*Murray v. Wack*,
    1996 U.S. Dist. LEXIS 9185 (July 2, 1996) .........................................................12

*Olmstead v. L.C. by Zimring*,
    527 U.S. 581 (1999)........................................................................................16, 17

*Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*,
    507 F.3d 117 (2d Cir. 2007)....................................................................................7

**Cases**                                                                 **Pages**

*Ripa v. Stony Brook Univ.*,
    2018 U.S. Dist. LEXIS 98629 (E.D.N.Y. June 11, 2018) .......................................8

*Shipping Fin. Servs. Corp. v. Drakos*,
    140 F.3d 129 (2d Cir. 1998)...........................................................................6

*Southeastern Comm. College v. Davis*,
    442 U.S. 397 (1979)....................................................................................14

*Sovak v. President of the Bd. of Educ.*,
    1998 U.S. Dist. LEXIS 12378 (S.D.N.Y. Aug. 10, 1998)........................................8

*Spiro v. Healthport Techs., LLC*,
    73 F. Supp. 3d 259 (S.D.N.Y. 2014)...............................................................6

*Spokeo Inc. v. Robbins*,
    136 S. Ct. 1540 (2016)..................................................................................6

*Steinberger v. Lefkowitz*,
    634 F. App'x 10 (2d Cir. 2015) ....................................................................6

*Szabo v. Paradis*,
    2018 U.S. Dist. LEXIS 147708 (S.D.N.Y. Aug. 29, 2018)....................................12

*Tardif v City of New York*,
    991 F.3d 394 (2d Cir. 2021)..........................................................................15

*Walker v. Feller*,
    U.S. Dist. LEXIS 17055 (E.D.N.Y. Aug. 16, 2005)..........................................12

*Yamashita v. Scholastic Inc.*,
    936 F.3d 98 (2d Cir. 2019)............................................................................7

**Statutes**

28 CFR 35.130(d) ...............................................................................................16

CPL 730 ..........................................................................1, 2, 3, 4, 5, 9, 10, 12, 17

CPL 730.10(2)......................................................................................................3

CPL 730.10(8)....................................................................................................4, 9

CPL 730.20 .........................................................................................................3

CPL 730.20(5)......................................................................................................4

| **Statutes** | **Pages** |
|---|---|

CPL 730.30 ....................................................................................................4, 9, 11

CPL 730.40 ...........................................................................................................10

CPL 730.40(1) ...................................................................................................2, 5, 9

CPL 780.10(8) ........................................................................................................2

FRCP 12(b)(1) ....................................................................................................5, 6

FRCP 12(b)(6) ..................................................................................................2, 3, 6

Rehab Act § 504 .............................................................................................10, 14

## PRELIMINARY STATEMENT

Plaintiffs bring this purported class action against the New York State Office of Mental Health ("OMH"), Ann Marie T. Sullivan, in her official capacity as the Commissioner of the New York State Department of Health and Mental Hygiene (together "State Defendants"), as well as the New York City Department of Health and Mental Hygiene ("DOHMH"), Michelle Morse, in her official capacity as the Commissioner of the New York City Department of Health and Mental Hygiene, and New York City Health and Hospitals Corporation ("HHC") (together "Municipal Defendants"). Plaintiffs are both individuals who have been ordered by a criminal court to be committed to an OHM hospital to receive competency restoration services after being found unfit to stand trial under New York Criminal Procedure Law 730 ("CPL 730"). CPL 730 dictates the manner in which an individual is to be examined and treated for competency in a criminal matter.

Plaintiffs' Complaint purports to bring this matter for two separate classes, the "delay class"[1] and the "integration class." Plaintiffs only bring claims against Municipal Defendants regarding the "integration class," alleging violations of both the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("Rehab Act"). Plaintiffs allege that both State Defendants and Municipal Defendants have failed to provide treatment for individuals subject to CPL 730 "in the most integrated setting appropriate to their needs," which Plaintiffs argue would be outpatient care. Plaintiffs assert that Municipal Defendants are "fail[ing] to assess [Plaintiffs] to determine which competency restoration setting is most appropriate for [their] needs."

---

[1] Plaintiffs' allegations regarding the "delay class" are only against the State defendants. Plaintiffs allege violations of due process, as well as the Americans with Disabilities Act and the Rehabilitation Act for individuals who have been ordered by a criminal court to receive competency restoration services pursuant to CPL 730 in a secure hospital setting, but are not being timely transferred to OMH custody to receive such treatment. As these allegations are only against the State Defendants, they will not be addressed in Municipal Defendants' motion to dismiss.

Plaintiffs' allegations fundamentally misunderstand the role CPL 730 prescribes to Municipal Defendants.  Pursuant to CPL 730, Municipal Defendants' only role in competency proceedings is to administer an examination to the individual when there is a question as to competency.  Pursuant to CPL 780.10(8), this examination is limited to making a determination *only* as to competency, not to treatment.  Further, CPL 730.40(1) expressly dictates the manner in which the criminal court, not Municipal Defendants, determines treatment for an individual who has been found incompetent to stand trial.  As such, Plaintiffs lack standing to bring this suit, as they can neither show that Municipal Defendants have caused them any harm, nor can they show that Municipal Defendants can redress Plaintiffs' allegations, and their claims should be dismissed pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1).  Further, the Court lacks subject-matter jurisdiction over this case as Plaintiffs are asking this Court to alter their state court orders committing them to a psychiatric facility and such a request is barred by the *Rooker-Feldman* doctrine.

Additionally, this matter should be dismissed pursuant to FRCP 12(b)(6) for failure to state a claim.  Plaintiffs allege that Municipal Defendants are in violation of both the ADA and the Rehab Act.  First, there can be no violation of the ADA or the Rehab Act where the claim is predicated on the adequacy of the medical treatment an individual is receiving.  As Plaintiffs' claims here are based on the type of treatment they are receiving, Plaintiffs have failed to make out a claim under either the ADA or the Rehab Act.  Further, Plaintiffs' claims that Municipal Defendants are in violation of the "integration mandate" of the ADA and the Rehab Act also fails because Plaintiffs are individuals who have been ordered by a criminal court to be confined to a secure hospital setting and therefore cannot show that their confinement is attributable to any discrimination on the part of Municipal Defendants.  As such, Plaintiffs' claims against Municipal

2

Defendants should also be dismissed pursuant to FRCP 12(b)(6) for failure to state a claim pursuant to the ADA or the Rehab Act.

## FACTS

The facts on which this motion is based are set forth in the Complaint (Dkt. no. 1) and are accepted as true for purposes of this motion. A brief summary is set forth below.

Plaintiffs commenced this action by filing the Complaint on August 12, 2025. *See generally* Compl. Plaintiff R.M. has a diagnosis of "other specified schizophrenia spectrum" and "other psychotic disorder." Compl. at ¶ 14. On March 12, 2025, with criminal charges pending, R.M. was found unfit to stand trial by the criminal court and ordered committed to an OMH hospital for competency restoration, and was remanded to jail following his commitment. *See id*. Plaintiff A.B. has a diagnosis of "other specified schizophrenia spectrum" and "other psychotic disorder." *Id*. at ¶ 15. A.B. was incarcerated at Rikers Island following his arrest and on March 26, 2025, was found by the criminal court to be unfit to stand trial and was ordered committed to an OMH hospital for competency restoration services. *See id*. Plaintiffs allege that they both "qualified to receive competency restoration services in the community with appropriate services and supports, and [they] desire[] such services." *Id*. at ¶¶ 14-15. Plaintiffs argue that "OMH, DOHMH, and HHC failed to assess [them] to determine which competency restoration setting is most appropriate for [their] needs." *Id*.

In a criminal matter, the court must ensure that the criminal defendant is competent to stand trial, i.e. understand the criminal proceedings against them and assist and consult with their attorney to prepare a defense. *See* Compl. at ¶ 22; CPL 730. To make such a determination, the court issues an "order of examination." *See id*.; CPL 730.10(2); 730.20. In New York City, DOHMH develops, implements, and oversees the competency examinations. *See id*. DOHMH has designated HHC, specifically HHC's Correctional Health Services ("CHS"), to conduct such

examinations. *See id*. Therefore, the competency examinations are Municipal Defendants' only role in CPL 730 proceedings. *See id*. at ¶¶ 22-23; s*ee generally* CPL 730. After HHC examiners conduct a competency exam, they must prepare an examination report, which is submitted to the court, and then shared with defendant's counsel and the district attorney. *See id*. at ¶ 24; CPL 730.20(5). An examination report is defined by CPL 730.10(8) as:

> a report made by a psychiatric examiner wherein he sets forth his opinion as to whether the defendant is or is not an incapacitated person, the nature and extent of his examination and, if he finds that he defendant is an incapacitated person, his diagnosis and prognosis and a detailed statement of the reasons for his opinion by making particular reference to those aspects of the proceedings wherein the defendant lacks capacity to understand or to assist in his own defense. The state administrator and the commissioner must jointly adopt the form of the examination report; and the state administrator shall prescribe the number of copies thereof that must be submitted to the court by the director.

As is readily apparent from the text, an examination report does not include *any* recommendation as to treatment and instead is simply a report containing CHS's determination of whether or not an individual is competent to stand trial and the reasons for the determination. *See* CPL 730.10(8). OMH develops the state's official competency examination report form, known as Form 16b (12/1988) and, as CPL 73010(8) dictates, it prompts the examiner to provide a summary of the individual's history, diagnosis, prognosis, and an opinion on the individual's competence. *See* Compl. at ¶ 33. Further, the examination report is simply a recommendation to the criminal court as to the competency of the defendant, and it can be challenged by the court, the defense attorney, or the district attorney. *See* CPL 730.30. In the event that the examination report's finding is challenged, a hearing will be held to determine the issue of competency. *See* Compl. at ¶ 24; CPL 730.30.

Once the court finds an individual is found incompetent to stand trial, it must issue either a temporary order of observation, if the person is charged with an unindicted felony, or an order

of commitment if the person is charged with an indicted felony. *See* Compl. at ¶ 24; CPL 730.40(1). When the court issues a temporary order of observation or a commitment order the individual is transferred to OMH's custody for competency restoration services. *See* Compl. at ¶ 25. Importantly, when an individual is transferred to OMH's custody for competency restoration services, such services may be delivered in an outpatient setting in these cases. *See* Compl. at ¶ 24; CPL 730.40(1). CPL 730.40(1) states that,

> when a felony complaint has been filed against the defendant, such court must issue a temporary order of observation committing him or her to the custody of the commissioner for care and treatment in an appropriate institution, or upon the consent of the district attorney, committing him or her to the custody of the commissioner for care and treatment on an out-patient basis.

As CPL 730.40(1) makes clear, it is the district attorney who has the final say over whether or not an individual is able to receive outpatient services. *See* Compl. at ¶ 24. Therefore, Plaintiffs' claims that Municipal Defendants have the authority to determine whether an individual who has been found incompetent to stand trial should receive inpatient or outpatient care is wholly untrue. *See id*. In fact, as the Complaint concedes, Municipal Defendants play *no role* in determining treatment of people found not competent to stand trial. *See generally* CPL 730; Compl. at ¶¶ 22-25.

## LEGAL STANDARDS

### A.    Dismissal under Rule 12(b)(1)

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 416–17 (2d Cir. 2015). Standing is "a requirement rooted in the traditional understanding of what it means to assert a 'case or controversy' under Article III" and "consists of three elements: the individual initiating the suit

'must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Dhinsa v. Krueger*, 917 F.3d 70, 77 (2d Cir. 2019) (quoting *Spokeo Inc. v. Robbins*, 136 S. Ct. 1540, 1547 (2016)) (additional internal quotation marks omitted). Each of these elements "must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Spiro v. Healthport Techs., LLC*, 73 F. Supp. 3d 259, 267 (S.D.N.Y. 2014) (quoting *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)); *see also FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) ("It is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record."). When a plaintiff "does not clearly allege facts in his complaint demonstrating that [he] had standing at the critical time, [the plaintiff] fails to establish the court's jurisdiction over his matter." *Steinberger v. Lefkowitz*, 634 F. App'x 10, 12 (2d Cir. 2015).

Further, "a case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. *Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000). A plaintiff has the burden of proving, by a preponderance of the evidence, that the Court has subject matter jurisdiction. *Id*. (citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996)).

**B.      Dismissal under Rule 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct involved." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "When the well-pleaded facts 'do not permit the court to infer more than the mere possibility of misconduct,' the court must grant a motion to dismiss." *Yamashita v. Scholastic Inc.*, 936 F.3d 98, 104 (2d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 679). The court, in deciding a motion to dismiss, must "accept as true the factual allegations of the complaint, and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) (citation omitted). However, the court shall not give "effect to legal conclusions couched as factual allegations." *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

The factual allegations of the complaint must be more than speculative, and must show the grounds upon which a plaintiff is entitled to relief beyond "labels and conclusions, and a formulaic recitation of a cause of action's elements." *Twombly*, 550 U.S. at 555. And "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A plaintiff must plead sufficient factual allegations which nudge their claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Further, when a complaint brings claims against multiple defendants, the facts alleged must also, "at a minimum, . . . give *each defendant* 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'" *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (quoting *Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847, 851 (2d Cir. 1961)) (emphasis added). "[L]umping all the defendants together in each claim and providing no factual basis to distinguish their conduct, . . . fail[s] to satisfy this minimum standard." *Id.* A plaintiff must raise "more than a sheer possibility that a defendant has acted unlawfully," and when a complaint "pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility

and plausibility of entitlement to relief'" and must be dismissed as to that defendant. *Gleason v. Scoppetta*, 566 F. App'x 65, 68 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678)).

## ARGUMENT

### POINT I

### PLAINTIFFS LACK STANDING AS THEY CANNOT SHOW CAUSATION OR REDRESSABILITY

**A.    Plaintiffs Fail to Show Causation**

As noted above, to establish standing, which is necessary for the exercise of subject matter jurisdiction under Article III, a plaintiff must show, among other things, that his alleged injury is "fairly traceable to the challenged conduct of the defendant." *Dhinsa*, 917 F.3d at 77. "The traceability requirement for Article III standing means that 'the plaintiff must demonstrate a causal nexus between the defendant's conduct and the injury.'" *Chevron Corp. v. Donziger*, 833 F.3d 74, 121 (2d Cir. 2016). When a plaintiff "fails to demonstrate how his alleged injuries are attributable to the defendants," the plaintiff has "failed to establish standing." *Sovak v. President of the Bd. of Educ.*, 1998 U.S. Dist. LEXIS 12378, at *10 (S.D.N.Y. Aug. 10, 1998).

The "requirement that a complaint allege[] an injury that is 'fairly traceable' to defendants' conduct . . . for [purposes of] constitutional standing is a 'lesser burden' than the requirement of proximate cause" applicable in tort law. *Ripa v. Stony Brook Univ.*, 2018 U.S. Dist. LEXIS 98629, at *12 (E.D.N.Y. June 11, 2018) quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 122 n.8 (2d Cir. 2003). However, it does require a showing that the plaintiff's "injury was in some sense caused by the opponent's *action or omission*." *Cortlandt St. Recovery Corp.*, 790 F.3d at 417 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)) (emphasis added).

Here, Plaintiffs have failed to establish causation, because Plaintiffs have not shown that the discriminatory conduct they allege—i.e., the alleged failure for Plaintiffs to receive competency restoration services in an outpatient versus inpatient setting—is "fairly traceable" to Municipal Defendants. *Dhinsa*, 917 F.3d at 77. As Plaintiffs' Complaint and CPL 730 make clear, Municipal Defendants' only role in CPL 730 proceedings is that DOHMH has delegated to HHC the responsibility of conducting competency examinations pursuant to CPL 730.30. *See* Compl. at ¶¶ 18-20; 22-23. As discussed above, CPL 730.10(8) defines what information the examination report is to contain and it does not include treatment. Plaintiffs acknowledge that while outpatient care can be available to individuals found incompetent to stand trial, it can only be done with the consent of the district attorney. *See* Compl. at ¶ 24; CPL 730.40(1).

Despite this acknowledgement, Plaintiffs allege that Municipal Defendants' "deficient assessment and evaluation policies and practices" have harmed Plaintiffs. Compl. at ¶¶ 40; 42; 62; 67. As both the Complaint and CPL 730 show, Municipal Defendants do not have *any control* over prescribing treatment to individuals who have been deemed incompetent to stand trial. *See* Compl. at ¶¶ 22-26. Thus, because Plaintiffs do not and cannot allege that Municipal Defendants engaged in any specific action or omission that "in some sense caused" Plaintiffs' injury, Plaintiffs fail to show causation, and, as such, have failed to establish standing. *Cortlandt St. Recovery Corp.,* 790 F.3d at 417.

**B.    Plaintiffs Fail to Show Redressability**

In addition to showing that they have suffered an injury in fact that is fairly traceable to a defendant's conduct, to establish standing, a plaintiff must also show redressability. *Dhinsa*, 917 F.3d 77. "Redressability requires that it 'be likely, as opposed to merely speculative, that [the plaintiff's alleged] injury will be redressed by a favorable decision.'" *Lovell v. Consol. Edison Co. of N.Y.*, 758 F. App'x 222, 224 (2d Cir. 2019) (quoting *Lujan*, 504 U.S. at 561); *see also Linda*

*R. S. v. Richard D.*, 410 U.S. 614, 618 (1973) (finding plaintiff lacked standing where "[i]f [the plaintiff] were granted the requested relief," the prospect that a particular outcome would occur "in the future, . . . can, at best, be termed only speculative").

In regards to Municipal Defendants, Plaintiffs' Complaint requests an order: 1) "declaring Defendants' conduct as alleged herein unlawful under the Americans with Disabilities Act and Section 504" and 2) "enter[ing] a permanent injunction requiring Defendants to promptly take all necessary and appropriate actions to serve Integration Plaintiffs and class members in the most integrated setting appropriate to their needs."  Compl. at Prayer for Relief (d) and (e).  However, Plaintiffs have failed to show that enjoining Municipal Defendants will remedy their alleged injury (i.e. the alleged failure for Plaintiffs to receive competency restoration services in an outpatient versus inpatient setting).

As explained at length, Municipal Defendants do not provide any treatment for Plaintiffs pursuant to CPL 730.  Instead, HHC administers only the examination report, and the determination of where and how Plaintiff is treated is determined during the criminal court proceedings.  *See* Compl. at ¶ 22-28; CPL 730.40.  Therefore, Plaintiffs have not alleged that Municipal Defendants have taken or have not taken any action whatsoever that is connected to Plaintiffs receipt of outpatient competency restoration services.  *See generally* Compl.  Further, a permanent injunction requiring Municipal Defendants to "promptly take all necessary and appropriate actions to serve Integration Plaintiffs and class members in the most integrated setting appropriate to their needs" would not result in the relief that Plaintiffs purport to want: outpatient care as opposed to inpatient care for competency restoration.  Assuming, *arguendo*, that HHC

could recommend treatment within an examination report, CPL 730.30 makes plain that the examination reports serve as recommendations to the court and are not binding.

Because Plaintiffs have failed to show that granting the relief they request will redress their alleged injury—and because, as discussed above, they have failed to show a causal connection between that injury and any conduct by Municipal Defendants—Plaintiffs have failed to establish standing. Thus, Plaintiffs' claims against Municipal Defendants must be dismissed for lack of subject matter jurisdiction.

### POINT II

### PLAINTIFFS LACK SUBJECT MATTER JURISDICTION PURSUANT TO THE *ROOKER-FELDMAN* DOCTRINE

While Plaintiffs do not directly challenge their state court ordered commitment to a psychiatric facility, the Complaint alleges that both Plaintiffs are "qualified to receive competency restoration services in the community with appropriate services and supports, and [they] desire[] such supports" and that "OMH can reasonably accommodate [them] in an outpatient program." Compl at ¶¶ 14-15. The Complaint further seeks a permanent injunction against Municipal Defendants "to promptly take all necessary and appropriate actions to serve Integration Plaintiffs and class members in the most integrated setting appropriate to their needs." *Id*. at Prayer for relief (e). The logical conclusion of these allegations and prayer for relief is that Plaintiffs are seeking for this federal court to alter their state court orders committing them to a psychiatric facility. Such a request is plainly barred by the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*

*Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005). "Rooker-Feldman directs federal courts to abstain from considering claims when four requirements are met: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010) (citing *Holblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)). "If these requirements are met, the court lacks jurisdiction even if the plaintiff alleges that the state court action was unconstitutional." *James v. New York*, 2013 U.S. Dist. LEXIS 64579, at *6 (E.D.N.Y. Mar. 6, 2013) (citing *Walker v. Feller*, U.S. Dist. LEXIS 17055, at *13 (E.D.N.Y. Aug. 16, 2005)).

All four of these elements are met in this case. First, an adjudication of incompetency and an order of commitment to a mental health facility pursuant to CPL 730 constitutes a loss in the state court proceedings. *See Szabo v. Paradis*, 2018 U.S. Dist. LEXIS 147708, at *6 (S.D.N.Y. Aug. 29, 2018) ("an adjudication of incompetency and an order of commitment to amental health facility pursuant to CPL 730 constitutes a loss in the state court proceedings under *Rooker-Feldman*"). Second, Plaintiffs claim that their court ordered commitment to a psychiatric facility and not outpatient care is violating the ADA and Rehab Act. *See* Compl. at ¶¶ 14-15; 40-41.

The third element is met because in asking this Court to second guess whether the commitment orders to a psychiatric hospital were proper and whether Plaintiffs should not have been, instead, ordered into an outpatient treatment facility, Plaintiff is improperly asking this Court to review those state court decisions. *See Murray v. Wack*, 1996 U.S. Dist. LEXIS 9185, *7-8 (July 2, 1996) (refusing to find subject-matter jurisdiction because plaintiff's allegation that his CPL 730 commitment was a constitutional deprivation was inextricably "bound up" with the

judgment by the state court ordering that commitment, and that an exercise of jurisdiction would "result in an appeal of the state court order.")

Finally, the fourth element of *Rooker-Feldman* is met because the state court commitment orders all pre-dated the filing of the Complaint.  *See* Compl. at ¶¶ 14-15.  Therefore, as Plaintiffs' suit seeks to have the federal court review and modify their state court ordered commitment to a psychiatric facility, the Court lacks subject matter jurisdiction over Plaintiffs' claims and the Complaint should be dismissed.

## POINT III

### PLAINTIFFS HAVE FAILED TO PLEAD A CLAIM PURSUANT TO THE ADA AND REHAB ACT AGAINST MUNICIPAL DEFENDANTS

#### A.    Reasonable Accommodation Claim

Plaintiffs claim under both causes of action that "Plaintiffs are qualified to receive services in more integrated community-based settings that meet their mental health needs" and that "[s]erving Plaintiffs in the most integrated settings appropriate to their needs can be reasonably accommodated and would not fundamentally alter OMH's, DOHMH's, or HHC's programs and services."  Compl.  at ¶¶ 89; 95.  However, the ADA and the Rehab Act were not meant as a means for parties to challenge the quality or adequacy of services provided to disabled individuals but instead to ensure fair treatment between the disabled and non-disabled individuals.  Because Plaintiffs' claims are a challenge to the adequacy of the treatment provided because of their disabilities, they do not state claims under either the ADA or the Rehab Act.

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination in any such entity."

13

Similarly, under Section 504 of the Rehab Act, "no otherwise qualified individual with a disability…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  A qualified individual with a disability "can base a discrimination claim on any of three theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation."  *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (cleaned up).  Here, Plaintiffs purport to proceed on the theory that Defendants failed to reasonably accommodate their needs to receive "more integrated community-based settings that meet their mental health needs."  Compl. at ¶¶ 89; 95.

"Courts generally apply the same legal standards when adjudicating claims arising under the ADA Title II and ones arising under the Rehabilitation Act."  *Maccharulo v. New York State Dep't of Corr. Servs.*, 2010 U.S. Dist. LEXIS 73312, at *8 (S.D.N.Y. July 21, 2010) (citing *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009)); *see also Doe v. Pfrommer*, 148 F.3d 73, 82 ("[t]he requirements under the ADA [and the Rehab Act] are nearly identical").  To establish a disability discrimination claim here, Plaintiffs must allege that (1) they are qualified individuals with a disability; (2) that they were excluded from participation in a public entity's services, programs, or activities or were otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to their disability.  *See, e.g., Greene v. City of New York*, 725 F. Supp. 3d 400, 424 (S.D.N.Y. 2024) (citing cases).

The purpose of the disability discrimination statutes is "to eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied."  *Pfrommer*, 148 F.3d at 82 (citing *Southeastern Comm. College v. Davis*, 442 U.S. 397, 410 (1979)).  Further, "[i]n keeping with this purpose, the Court of Appeals has repeatedly held that a

14

plaintiff may not challenge the adequacy of services provided exclusively to the disabled under either the ADA or the Rehabilitation Act." *Greene*, 725 F. Supp. 3d at 424.  For instance, in *Tardif v City of New York*, 991 F.3d 394 (2d Cir. 2021), the Second Circuit held that failure to provide custodial medical services does not, by itself, "constitute[] a failure to make a reasonably accommodation by reason of an individual's disability under the ADA."  In that case, the police allegedly deprived a pre-arraignment detainee of her epilepsy medication, which in turn, caused her to have a seizure. *See id*. at 398-399.   In dismissing plaintiff's disability discrimination claim, the Court found that "the fact that her disability was her motivation for seeking out such services does not suddenly transform her allegations regarding the inadequate medical treatment into a 'failure to accommodate' claim."  *Id*. at 406.  In other words, because "her claim relate[ed] solely to whether she received adequate medical treatment in policy custody *for* her disability…[it] is not cognizable under the ADA."  *Id*. at 405; *see also Pfrommer*, 148 F.3d at 84 (upholding summary dismissal of claims under the ADA and the Rehab Act where plaintiff "ultimately [sought] to challenge [] not illegal discrimination against the disabled, but the substance of the services provided"); *Maccharulo*, 2010 U.S. Dist. LEXIS 73312, at * 15 (dismissing claims under the ADA and Rehab Act where "[p]laintiffs' contentions that Decedent was inappropriately denied level one services while in a level two facility" were found to be "challenges to the quality of mental health services provided" and thus not cognizable).

The allegations in the Complaint clearly challenge the adequacy of services provided only to disabled individuals, rather than the denial to disabled persons of access to programs or services provided to non-disabled individuals.  Specifically, Plaintiffs argue that "OMH's city partners – DOHMH and HHC – lack any policies or procedures to mandate an individual determination of whether a person requires hospitalization or alternatively is eligible and would benefit from

restoration in an outpatient setting." Compl. at ¶ 39. Plaintiffs also allege that they "are qualified to receive services in more integrated community-based settings that meet their mental health needs." *Id*. at ¶¶ 14-15. This is quintessentially a challenge to the quality of certain services provided only to Plaintiffs with a disability, and not a claim concerning whether there is "evenhanded treatment between the disabled and the able-bodied." *Maccharulo*, 2010 U.S. Dist. LEXIS 73312, at *15 (citing *Pfrommer*, 148 F.3d at 82). For this reason alone, Plaintiffs' disability discrimination claims based upon a failure to accommodate against Municipal Defendants should be dismissed.

**B.    Integration Mandate Claim**

Plaintiffs also bring their claims pursuant to the integration mandate of the ADA, which provides that "a public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 CFR 35.130(d). Pursuant to the integration mandate the "unjust institutional isolation of persons with disabilities is, in and of itself, a prohibited form of discrimination." *Davis v. Shah*, 821 F.3d 231 (2d Cir. 2016) (citing *Olmstead v. L.C. by Zimring*, 527 U.S. 581, 600 (1999)) (internal quotations omitted). In *Olmstead*, in order to avoid such discrimination, the Supreme Court held that a mentally disabled person may be placed in a community setting as opposed to an institution when "the State's treatment professionals have determined that community placement is appropriate, the transfer from institutional care to a less restrictive setting is not opposed by the affected individual, and the placement can be reasonably accommodated taking into account the resources available to the State and the needs of others with mental difficulties." 527 U.S. at 587.

Plaintiffs' claims do not implicate the integration mandate as no treatment professional has determined that community placement is appropriate. Instead, both Plaintiffs in this matter have valid orders of commitment from a criminal court. *See* Compl. at ¶¶ 14-15. Plaintiffs attempt to

ignore this fact by simply alleging that they are "qualified to receive competency restoration services in the community with appropriate services and supports, and he desires such services." *Id*. This is not the *Olmstead* analysis and, as the Complaint makes clear, Plaintiffs cannot state a claim under *Olmstead* for violation of the integration mandate because neither has received a recommendation from the State's treatment professionals that community placement is appropriate. 527 U.S. at 587.

In a similar case to the this, *In re Matthew P. v. Neifeld*, 280 Misc. 3d 950 (Sup. Ct., Putnam Cnty, Sept. 5, 2023), a Plaintiff who was under a court order pursuant to CPL 730 to receive treatment at an Office for People with Developmental Disabilities ("OPWDD") facility challenged the delay in transferring him to such a facility from Putnam County Correctional Facility. Plaintiff brought a claim pursuant to the ADA and the Rehab Act and alleged, *inter alia*, that Defendants' failure to place Plaintiff in a "community residence[]" violated the integration mandate. *Id*. at 971. The Court soundly rejected this argument, holding that it was "inaccurate as a matter of law" as "[t]he state's treatment professionals had *not* determined that community placement was appropriate for Matthew." *Id*. That is precisely the case here. Both Plaintiffs are under valid court orders to receive competency restoration services at an OMH hospital and there has been no recommendation from the State's treatment professionals for community placement. *See* Compl. at ¶¶ 14-15. Therefore, there is no violation of the integration mandate of the ADA and Plaintiffs' claims must be dismissed.

## <u>CONCLUSION</u>

For the reasons set forth above, Municipal Defendants respectfully request that their motion be granted in its entirety and that the Complaint be dismissed, and that they be awarded such other and further relief as this Court deems just and proper.

Dated:        New York, New York
              November 3, 2025

                                          **MURIEL GOODE-TRUFANT**
                                          Corporation Counsel of the
                                            City of New York
                                          Attorney for Municipal Defendants
                                          100 Church Street
                                          New York, New York 10007
                                          (212) 356-4377


                                          By:   */s/ Kendra Elise Riddleberger*
                                                Kendra Elise Riddleberger
                                                Assistant Corporation Counsel

                                                */s/ Ann-Marie Tesar*
                                                Ann-Marie Tesar
                                                Assistant Corporation Counsel

**CERTIFICATION PURSUANT TO RULE 7.1 (c) OF THE LOCAL RULES OF THE UNITED STATES DISTRICT COURTS FOR THE SOUTHERN AND EASTERN DISTRICTS OF NEW YORK**

According to Microsoft Word 365, the portions of the memorandum of law that must be included in a word count contains 5,568 words, and complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

Dated:          November 3, 2025
                    New York, New York

MURIEL GOODE-TRUFANT
Corporation Counsel of the
  City of New York
Attorney for Municipal Defendants
New York, New York 10007
(212) 356-4377
kriddleb@law.nyc.gov

By:      */s/ Kendra Elise Riddleberger*
              Kendra Elise Riddleberger
              *Assistant Corporation Counsel*


              */s/ Ann-Marie Tesar*
              Ann-Marie Tesar
              Assistant Corporation Counsel