**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| R.M., by and through next friend Elfego Maldonado Estrada, and A.B., by and through next friend Kadijah Hutchinson-McLean, on behalf of themselves and all others similarly situated, | C.A. No. 25-cv-06667 (AKH) |
| Plaintiffs, | |
| - vs - | |
| NEW YORK STATE OFFICE OF MENTAL HEALTH; ANN MARIE T. SULLIVAN, in her official capacity as the Commissioner of the New York State Office of Mental Health; the NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE; MICHELLE MORSE, in her official capacity as the Commissioner of the New York City Department of Health and Mental Hygiene; and NEW YORK CITY HEALTH AND HOSPITALS CORPORATION; | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT**
**OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ........................................................................................................................ 2

   I.    PLAINTIFFS ARE SUBSTANTIALLY LIKELY TO SUCCEED ON THEIR DUE
PROCESS CHALLENGE. ................................................................................................. 2

      A.   *Jackson* Requires This Court to Analyze the Harmful Nature of Plaintiffs'
Commitment. ................................................................................................................... 2

      B.   Defendant Attempts to Minimize Plaintiffs' Competency Restoration Delays By
Mischaracterizing Second Circuit Precedent and Relying on Irrelevant Cases. ..................... 5

      C.   Limited State Resources Is No Defense to Denying People their Due Process Rights 10

   II.       PLAINTIFFS ARE SUFFERING IRREPARABLE HARM. ...................................... 11

   III.    PLAINTIFFS' INJUNCTION IS IN THE PUBLIC INTEREST. ............................... 15

   IV.    PLAINTIFFS' PROPOSED INJUNCTION COMPLIES WITH RULE 65(D). ......... 17

CONCLUSION .................................................................................................................... 19

REPLY DECLARATION OF SHONA HEMMADY IN FURTHER SUPPORT OF
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

      EXHIBIT A: TRANSCRIPT OF STATUS CONFERENCE, NOVEMBER 13, 2025

## **TABLE OF AUTHORITIES**

PAGE(S)

### CASES

*Advocacy Ctr. For Elderly & Disabled*,
   731 F. Supp. 2d 603 (E.D. La. 2010) ....................................................................... 4

*Agostini v. Backus*,
   2015 WL 1579324 (W.D.N.Y. Apr. 9, 2015) ........................................................... 12

*Arias v. Decker*,
   459 F. Supp. 3d 561 (S.D.N.Y. 2020) ............................................................... 11, 13

*Averhart v. Annucci*,
   2021 WL 2383556 (S.D.N.Y. June 10, 2021) ......................................................... 15

*Charles W. v. Maul*,
   214 F.3d 350 (2d Cir. 2000) ................................................................................... 10

*Dean v. DeBejian*,
   2022 WL 17842983 (N.D.N.Y. Dec. 22, 2022) ...................................................... 12

*Fisher v. Goord*,
   981 F. Supp. 140 (W.D.N.Y. 1997) ........................................................................ 14

*Glendening, as Next Friend of G.W. v. Howard*,
   707 F. Supp. 3d 1089 (D. Kan. 2023) ................................................................. 9, 10

*Jackson v. Indiana*,
   406 U.S. 715 (1972) ......................................................................................... *passim*

*JSG Trading Corp. v. Tray-Wrap Inc.*,
   917 F.2d 75 (1990) ................................................................................................. 12

*League of Women Voters of the U.S. v. Newby*,
   838 F.3d 1, 12 (D.C. Cir. 2016) ............................................................................. 15

*Ligon v. City of New York*,
   925 F. Supp. 2d 478 (S.D.N.Y. 2013) .................................................................... 17

*Lopez v. Decker*,
   978 F.3d 842 (2d Cir. 2020) ..................................................................................... 9

*Metro. Transportation Auth. v. Duffy*,
    784 F. Supp. 3d 624 (S.D.N.Y. 2025) ..................................................................... 15

*Mitchell v. Cuomo*,
    785 F.2d 804 (2d Cir. 1984) ................................................................................... 15

*Nken v. Holder*,
    556 U.S. 418 (2009) ............................................................................................... 15

*Sajous v. Decker*,
    2018 WL 2357266 (S.D.N.Y. May 23, 2018) ........................................................ 15

*T-Mobile Ne. LLC. v. Water Auth. of W. Nassau Cnty*,
    249 F. Supp. 3d 680 (E.D.N.Y. 2017) .................................................................... 12

*Trueblood v. Washington State Dep't of Soc. & Health Servs.*,
    73 F. Supp. 3d 1311 (W.D. Wash. 2014) .................................................................. 5

*United States v. Brown*,
    2019 WL 9410160 (E.D. Wis. Oct. 16, 2019)........................................................... 7

*United States v. Carter*,
    2019 WL 9410160 (E.D. Wis. Oct. 16, 2019)......................................................... 10

*United States v. Donnelly*,
    41 F.4th 1102 (9th Cir. 2022) ............................................................................... 7-8

*United States v. Hylton*,
    2023 WL 7280170 (S.D.N.Y. Nov. 3, 2023) ............................................................ 8

*United States v. Magassouba*,
    544 F.3d 387 (2d Cir. 2008) ......................................................................... *passim*

*United States v. Lara*,
    671 F. Supp. 3d 1257 (D.N.M. 2023) ..................................................................... 10

*United States v. Olaniyi*,
    2024 WL 4500921 (E.D.N.Y. Oct. 15, 2024) ........................................................... 9

*United States v. McCarthy*,
    703 F. Supp. 3d 1377 (M.D. Fla. 2023) ......................................................... 4, 8, 10

*United States v. Reeves*,
    690 F. Supp. 3d 531 (W.D.N.C. 2023) ................................................................... 10

*United States v. Smith*,
    764 F. Supp. 2d 541 (W.D.N.Y. 2011) .......................................................... 5, 8, 10

*United States v. Speed Joyeros, S.A.*,
    204 F. Supp. 2d 412 (E.D.N.Y. 2002) ................................................................. 9

*United States v. Walters*,
    910 F.3d 11 (2d Cir. 2018) ................................................................................ 7

*United States v. Young*,
    2022 WL 7087140 (W.D.N.Y. Oct. 12, 2022) ..................................................... 8

*Velesaca v. Decker*,
    458 F. Supp. 3d 224 (S.D.N.Y. 2020) ..................................................... 11, 13, 17

*V.W. by & through Williams v. Conway*,
    236 F. Supp. 3d 554 (N.D.N.Y. 2017) .............................................................. 13

*Ward v. LeClaire*,
    2007 WL 1532067 (N.D.N.Y. May 24, 2007) ................................................... 12

*Woe ex rel. Woe v. Cuomo*,
    729 F.2d 96 (2d Cir. 1984) ................................................................................ 3

*Yang v. Kosinski*,
    960 F.3d 119 (2d Cir. 2020) ............................................................................ 15

## STATUTES & RULES

Fed. R. Civ. P. 65 ................................................................................................ 1, 17

N.Y. Crim. P. Law § 730 ......................................................................................... 4, 13

## PRELIMINARY STATEMENT

Defendant Sullivan's submissions highlight the urgent need for a preliminary injunction. Defendant Sullivan (hereinafter "Defendant") does not dispute that approximately 100 people charged with felonies and committed to OMH custody for competency restoration services *are* suffering and *will continue* to suffer, at a minimum, three-month delays in receiving competency restoration services. Indeed, last week, Defendant conceded that the delays only "continue[] to get worse." During these delays, which have only continued to grow longer, this group continues to be exposed to a jail environment on Rikers Island rife with well-documented brutality and appalling neglect of mental health treatment needs—conditions that exacerbate people's mental health symptoms and reduce the likelihood of successful restoration. Without adequate and timely competency restoration services, this group will continue to suffer irreparable harm in the absence of an injunction. Defendant's absurd argument that Plaintiffs allege merely speculative harm about the dangers of confinement on Rikers Island asks the Court to ignore Plaintiffs' evidence—and common knowledge—about long-existing conditions there.

Defendant attempts to rewrite the *Jackson v. Indiana* standard to argue, incorrectly, that this Court's analysis of this motion by Named Plaintiffs and putative class members (collectively "Plaintiffs") turns on delay times—with no consideration of the nature of Plaintiffs' confinement, including whether they are progressing towards restoration. Plaintiffs are likely to succeed on the merits because, as in *Jackson*, the "nature and duration" of their confinement bear no reasonable relation to the purpose of their commitment, which is competency restoration. Because of Plaintiffs' robust showing both a substantial likelihood of success on the merits and irreparable harm, and because Plaintiffs' proposed injunction is in the public interest and complies with Rule 65(d), Plaintiffs respectfully request that the Court grant their motion for a preliminary injunction.

<u>**ARGUMENT**</u>

## I. PLAINTIFFS ARE SUBSTANTIALLY LIKELY TO SUCCEED ON THEIR DUE PROCESS CHALLENGE.

Defendant's opposition to the merits of Plaintiffs' due process claim fails because it is premised on (a) rewriting the *Jackson v. Indiana*, 406 U.S. 715 (1972) standard to eliminate consideration of the nature of Plaintiffs' commitment; (b) minimizing the egregious delay times based on a misreading of Second Circuit precedent and reliance on flawed or irrelevant district court decisions; and (c) excusing Defendant's failure to allocate sufficient resources to keep up with competency restoration needs. As shown below, Plaintiffs are substantially likely to succeed on the merits of their due process challenge because the "nature and duration of [their] commitment" bear no "reasonable relation to the purpose for which [they are] committed," which is competency restoration.[1] *Id.* at 738.

### A. *Jackson* Requires This Court to Analyze the Harmful Nature of Plaintiffs' Commitment.

Defendant concedes that *Jackson* governs Plaintiffs' due process claim, yet attempts to modify the *Jackson* standard to focus exclusively on the "nature and length *of the delays,*" rather than on the nature and duration of *commitment. See* Def.'s Mem. Opp'n. Prelim. Inj. ("PI Opp."), ECF No. 71 at 21, 26; Def.'s Mem. Supp. Mot. Dismiss ("MTD"), ECF No. 63 at 12–13. Under this contrived standard, Defendant proceeds to discuss only delay periods, citing cases that are easily distinguishable from this case.

---

[1] As explained in the Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Injunction (ECF 33) ("PI Mot."), Plaintiffs seek preliminary injunctive relief only as to their Fourteenth Amendment due process claim. *See* PI Motion at 1, 15–16. Accordingly, Plaintiffs do not respond to the five-plus page argument from Defendants attacking disability rights theories that are not the subject of this motion. *See* Def.'s Mem. Opp'n. Prelim. Inj. (ECF No. 71) ("PI Opp."), at 26–31. Although Plaintiffs move for preliminary relief on due process grounds only, they will continue to prosecute their Americans with Disabilities Act and Rehabilitation Act claims in this matter.

Under *Jackson*, the nature of Plaintiffs' commitment is as central to the Court's inquiry as the duration. Both must be assessed to determine whether Plaintiffs' commitment bears some reasonable relation to the purpose of competency restoration. *Jackson*, 406 U.S. at 738. As the Supreme Court explained, a person's "continued commitment must be justified by progress toward that goal" of restoration. *Id.* This requires consideration of the conditions, treatment, and other aspects of an individual's confinement. *Id.*; *see also Woe ex rel. Woe v. Cuomo*, 729 F.2d 96, 105 (2d Cir. 1984) ("If the justification for commitment rests, even in part, upon the need for care and treatment . . . then a State which commits must also treat."). Analysis of the nature and duration of commitment are intertwined because commitment cannot last longer than necessary to accomplish the objective of "determin[ing] whether there is a substantial probability that [the individual] will attain that capacity in the foreseeable future." *Id.* Accordingly, the absence of *any* effort to determine the probability that an individual will be restored is relevant to whether the nature and duration of commitment bear a reasonable relation to the purpose of commitment.

Defendant does not engage with any aspect of the nature of Plaintiffs' commitment, except to claim that OMH has no control over the conditions of confinement, disregarding the fact that only OMH controls how long Plaintiffs are subject to those conditions. PI Opp. at 8. As a result, Defendant ignores virtually all of Plaintiffs' evidence demonstrating the dangerous conditions on Rikers Island, the fact that Plaintiffs are held in limbo without receiving *any* competency restoration services, and the fact that Plaintiffs are not making *any* progress towards competency restoration. *See* Pls.' Mem. Supp. Prelim. Inj. ("PI Mot."), ECF No. 33 at 5–15. Further, Defendant ignores that no doctor has evaluated Plaintiffs to determine whether there is a substantial probability that they will be restored to competency. Prior to commitment, Plaintiffs have been examined only for fitness to stand trial, not for the likelihood that they will attain competence in

3

the future. *See* New York Criminal Procedure Law § 730.20. That restorability determination is made only after OMH admits an individual to the hospital.

OMH is warehousing people in Rikers jails for months until it is finally ready to provide them treatment in an appropriate restoration environment. *See* PI Mot. at 3; PI Opp. at 1; Declaration of Matthew S. Schatzel ("Schatzel Decl."), ECF 69 ¶ 9. That confinement is wholly unrelated to the purpose of competency restoration. In cases involving similar challenges to competency restoration delays, courts applying the *Jackson* standard have routinely found that warehousing people in jail due to the state's inability to meet their needs in an appropriate setting bears no relation to competency restoration. For example, a Louisiana district court granted a preliminary injunction based on its finding that "Incompetent Detainees remain[ed] in jail because [the hospital was] full, not because there [was] any suggestion that remaining in jail might restore their competency," and thus, the nature of plaintiffs' commitment was not reasonably related to its purpose. *Advocacy Ctr. For Elderly & Disabled*, 731 F. Supp. 2d 603, 621 (E.D. La. 2010). A district court in Florida found that "not only has [defendant's] present incarceration borne no 'reasonable relation' to his medical evaluation. . . but it has been an unqualified waste of time." *United States v. McCarthy*, 703 F. Supp. 3d 1377, 1380–81 (M.D. Fla. 2023) (citation omitted). Defendant does not dispute that Rikers Island is not an appropriate setting for competency restoration. Nor do they dispute Plaintiffs' evidence that Plaintiffs do not progress toward the goal of competency restoration while languishing at Rikers Island. *See* Declaration of Shona Hemmady in Support of Plaintiffs' Motion for a Preliminary Injunction ("Hemmady PI Decl."), ECF 29 at 3–4. Indeed, Defendant concedes that Plaintiffs remain incarcerated at Rikers Island solely because OMH lacks "the necessary bed space" in their facilities for competency restoration, not because such incarceration furthers restoration. *See* PI Opp. at 28.

Confinement on Rikers Island is not merely unrelated to competency restoration—it actively thwarts the prospect of restoration. As Plaintiffs demonstrated, *see* PI Mot. at 7–15, and Defendant does not dispute, the absence of treatment and exposure to harsh jail conditions on Rikers Island are counter therapeutic. *See Trueblood v. Washington State Dep't of Soc. & Health Servs.*, 73 F. Supp. 3d 1311, 1313 (W.D. Wash. 2014) ("Defendants' failure to provide timely services to these detainees has caused them to be incarcerated, sometimes for months, in conditions that erode their mental health, causing harm and making it even less likely that they will eventually be able to stand trial."); *see also United States v. Smith*, 764 F. Supp. 2d 541, 544–45 (W.D.N.Y. 2011) (holding that due process would be violated by continued confinement in jail conditions, including 23-hour isolation, limited mental health treatment, and no examination of the person's probability of being restored to fitness). While awaiting competency restoration services, class members are confined in dangerous jail conditions on Rikers Island, with no competency restoration services, excessive use of force, and harmful conditions of isolation. *See* PI Mot. at 5–15. These conditions of confinement combine to reduce the likelihood of successfully restoring the competency of class members. Decl. of Lauren Elizabeth Kois ("Kois Decl."), ECF No. 42, at 10, 53, 58, 61–63, 66–70, 75–77, 81–82, 85–92.

**B. Defendant Attempts to Minimize Plaintiffs' Competency Restoration Delays By Mischaracterizing Second Circuit Precedent and Relying on Irrelevant Cases.**

Defendant's argument that the median 81-day delay in competency restoration services does not give rise to a due process violation relies on a handful of cases that are distinguishable based on the time periods considered and the extreme remedy sought. Among these cases is *United States v. Magassouba*, 544 F.3d 387 (2d Cir. 2008) where Magassouba, a federal criminal defendant, experienced a 19-month commitment after being found incompetent. But that 19-month

period encompassed four months of hospitalization and provision of competency restoration treatment—including medication, which Magassouba refused. That refusal triggered 13 months of further detention and additional proceedings about involuntary medication, extending Magassouba's commitment. *Id*. at 395–96, 399. Defendant claims that the 19-month commitment was found not to be unreasonable, but they ignore that the vast majority of that time (at least 15 months) occurred *while* Magassouba was hospitalized, *see id.* at 395–396 (noting that Magassouba was hospitalized for almost five months) or contesting the offered restoration treatment, *see id.* at 418 ("[F]rom July 15, 2005, to May 10, 2006 [ten months], the district court diligently pursued the [involuntary medication] inquiry . . . "). In this case, the delays that Plaintiffs experienced, and will experience, exceed Magassouba's pre-hospitalization delay of two months. *See* Declaration of Leighann Starkey in Support of Class Certification ("Starkey Decl.") ¶ 14, ECF 14 (calculating median delay of 81 days). The two Named Plaintiffs were forced to wait 166 days for transfer; and so far this year Legal Aid has had at least 40 clients who waited more than 150 days, at least 12 of whom waited more than 180 days. Reply Declaration of Shona Hemmady in Further Support of Plaintiffs' Motion for a Preliminary Injunction ("Hemmady PI Reply Decl.") ¶¶ 7–8.[2] The increase in delay times reflect what OMH recently conceded: "[The delays] continue[] to get worse." Hemmady PI Reply Decl., Ex. A.

Unlike in *Magassouba*, as of the filing of the complaint in this case, the Named Plaintiffs had not been transferred to a hospital.[3] That distinction matters here because, unlike Magassouba, Plaintiffs were neither determined to be restorable, nor did they receive *any* competency

---

[2] Information shared in this declaration is materially the same as the information shared in the Declaration of Shona Hemmady in Support of Plaintiffs' Motion for Expedited Discovery and an Order Directing a Rule 26(f) Conference, ECF 76.

[3] Plaintiff R.M. and Plaintiff A.B. were finally transferred to a hospital on August 25, 2025 and September 8, 2025 respectively. Hemmady PI Reply Decl. ¶¶ 3–4.

restoration services.[4] Some members of the putative class may have "no substantial probability" of "attain[ing] that capacity in the foreseeable future," *Jackson*, 406 U.S. at 738, and are, therefore, being held in truly purposeless prolonged detention on Rikers Island.

*Magassouba* is also distinguishable because Plaintiffs here seek only more expeditious treatment, whereas Magassouba did not want treatment and instead moved for dismissal of his indictment and an end to his continued confinement for treatment purposes. Dismissing an indictment is a "drastic remedy," *United States v. Brown*, 602 F.2d 1073, 1076 (2d Cir. 1979) (internal quotation marks omitted), requiring a criminal defendant to meet a "very heavy burden" so as to show "outrageous conduct," *United States v. Walters*, 910 F.3d 11, 27 (2d Cir. 2018) (citations and quotations omitted), which informed the Second Circuit's analysis. *See Magassouba*, 544 F.3d at 411 (comparing the dismissal remedy sought by Magassouba to the remedy the Supreme Court ordered in *Jackson*). Given the relief sought and because for 13 months Magassouba refused the competency restoration treatment that was likely to restore him, the Second Circuit applied a test similar to the speedy-trial test and declined to find a due process violation. *Id*. at 392, 416, 418.

When courts have applied the *Jackson* standard to examine the nature and duration of commitment in relation to the purpose of commitment, they have found that pre-hospitalization confinement time periods, like those experienced by Plaintiffs, violate due process, including a delay as short as seven days. *See, e.g.*, *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1120, 1123 (9th Cir. 2003) (9th Cir. 2003) (affirming an injunction on due process grounds that required the State to transfer people who were unfit to stand trial and detained in county jails within seven

---

[4] The Second Circuit emphasized the importance of the likelihood that a criminal defendant could attain competency while analyzing additional factors to assess Magassouba's due process claim. *Magassouba*, 544 F.3d at 403. But because this factor is not applicable to individuals experiencing prehospitalization delays in New York's competency restoration system, the test articulated in *Magassouba* does not apply in this case.

days of a judicial order of commitment); *see also United States v. Donnelly*, 41 F.4th 1102, 1106 (9th Cir. 2022) ("We do not think *Jackson*'s 'reasonable relation' requirement permits a pre-hospitalization commitment period, whose purpose is simply to identify an appropriate treatment facility and arrange for the criminal defendant's transportation to that facility, to last longer than [four months]."); *McCarthy*, 703 F. Supp. at 1380 (holding that a delay longer than four months is presumptively unconstitutional and criminal defendant's five-month pre-hospitalization delay was unconstitutional since there was no evaluation of the probability of restoration during that period); *Smith*, 764 F. Supp. 2d at 544–45 (holding that continued commitment of a criminal defendant held for ten weeks already would be unconstitutional under *Jackson* after analyzing both nature and duration of commitment).

Defendant next relies on cases that misconstrued *Magassouba* as establishing a broad bright-line rule sanctioning a 19-month long confinement, without addressing the factual differences between the challenged confinement and the facts of *Magassouba*. In *United States v. Young*, 2022 WL 7087140, at *3 (W.D.N.Y. Oct. 12, 2022), a federal criminal defendant challenged a pre-hospitalization delay on due process grounds, and sought to dismiss his indictment.[5] The Western District of New York erroneously reasoned that, because there was no due process violation following a 19-month delay in *Magassouba*, the criminal defendant's four-month delay was constitutional; the court failed to address the nature of the criminal defendant's commitment, including whether the criminal defendant's incarceration or hospitalization during

---

[5] *Young* and another case cited by Defendant, *United States v. Hylton*, 2023 WL 7280170, at *6 (S.D.N.Y. Nov. 3, 2023), are also distinguishable from this case for the same reason that *Magassouba* is distinguishable. In each case, the federal criminal defendants, who were committed for competency restoration, sought dismissal of their indictments and other relief, and the courts rejected the petitioners' request for this relief. *See Hylton*, 2023 WL 7280170, at *6 (finding that the criminal defendant's delayed transportation to a Bureau of Prisons ("BOP") medical facility did not constitute such "grossly shocking and outrageous conduct" that it warranted dismissal of criminal defendant's probation violation); *Young*, 2022 WL 7087140, at *3 (declining to dismiss the indictment based on the delay in competency restoration treatment).

those four months was relevant to the analysis. *Id*. at *3. Defendant also cites *United States v. Olaniyi*, where the Eastern District of New York similarly erred by construing *Magassouba* as broadly sanctioning a 19-month confinement, and thus finding the defendant's pre-hospitalization delay constitutional. 2024 WL 4500921, at *6 (E.D.N.Y. Oct. 15, 2024). These district court decisions are unpersuasive because they overlook that Magassouba actually spent two months waiting for hospitalization and treatment. And these decisions are particularly unpersuasive because their misreading of *Magassouba* as establishing a 19-month standard directly conflicts with the Supreme Court's holding that it is "not . . . appropriate for [the Court] to attempt to prescribe arbitrary time limits" applicable to due process claims by pretrial detainees requiring competency restoration. *See Jackson*, 406 U.S. at 738.

Defendant's reliance on an out-of-circuit case, *Glendening ex rel. v. Howard*, 707 F. Supp. 3d 1089, 1105 (D. Kan. 2023), is improper because it conflicts with Second Circuit precedent recognizing that a pretrial detainee's right to liberty is fundamental in nature. *Compare id*. at 1105 (holding that pretrial detainees did not have a fundamental right to pretrial liberty, only "a right to be free from detention-as-punishment absent a conviction") *with Lopez v. Decker*, 978 F.3d 842, 851, 856 (2d Cir. 2020) (recognizing that the fundamental liberty interests of immigration detainees, pretrial detainees committed for competency restoration, and civilly committed insanity acquittees are identical); *see also United States v. Speed Joyeros, S.A.*, 204 F. Supp. 2d 412, 437 (E.D.N.Y. 2002) (noting that any infringement on pretrial detainees' liberty must be "narrowly tailored" to the purpose of ensuring the criminal defendant's presence at trial). After deciding that the right at issue was not fundamental, the *Glendening* court applied a highly deferential "reasonable relation" standard, and held that the delay did not "amount[] to unconstitutional punishment," to conclude that plaintiffs did not establish a substantial likelihood of success on

their due process claim. *Glendening*, 707 F. Supp. 3d at 1106. Given the conflicting Second Circuit precedent, *Glendening*'s analysis and its conclusion are simply irrelevant. As Defendant concedes, *Jackson* provides the applicable framework, MTD at 12–13, and this Court should apply *Jackson* here as the Second Circuit and its district courts have done. *See, e.g., Charles W. v. Maul*, 214 F.3d 350, 358-59 (2d Cir. 2000); *Smith*, 764 F. Supp. 2d at 545.

### C. Limited State Resources Is No Defense to Denying People Their Due Process Rights

Finally, Defendant asserts that the State's insufficient resources is a defense to Plaintiffs' due process claim. PI Opp. at 13–14. This argument lacks merit. The State has the duty "to keep up with the number of patients that require competency restoration" and "to figure out how to allocate those resources" in order to make timely competency restoration services available. *United States v. Lara*, 671 F. Supp. 3d 1257, 1265 (D.N.M. 2023) (cleaned up) (holding delayed competency restoration services violated due process, reasoning that "the delay is attributable to the BOP's failure to maintain adequate facilities"); *see also Smith*, 764 F. Supp. 2d at 543–45 (finding a due process violation based on the criminal defendant's ten-week delay and conditions of his confinement even though the delay was due to insufficient hospital bed space); *United States v. Reeves*, 690 F. Supp. 3d 531, 536 (W.D.N.C. 2023) (holding that BOP's "strained" resources did not excuse due process violations, noting that "administrative and bureaucratic deficiencies did not just sneak up on the Attorney General; they have been years in the making and reasonably foreseeable"); *McCarthy*, 703 F. Supp. 3d at 1380–81 (holding pre-hospitalization delay violated due process, reasoning that the "solution" to the government's "lack of resources . . . cannot be commitment of an incompetent defendant to the debilitating purgatory of indefinite confinement"); *United States v. Carter*, 2019 WL 9410160, at *2 (E.D. Wis. Oct. 16, 2019) (holding that

"insufficient staffing or facilities" did not "excuse lengthy detention"), *report and recommendation adopted*, 2020 WL 1620530 (E.D. Wis. Apr. 1, 2020).

For all these reasons, Plaintiffs show that they are substantially likely to succeed on the merits of their due process claim because the nature and duration of Plaintiffs' confinement bear no relation to competency restoration, in violation of due process.

## II. PLAINTIFFS ARE SUFFERING IRREPARABLE HARM

Defendant's arguments that Plaintiffs have failed to establish irreparable harm are meritless. PI Opp. at 32–36. Plaintiffs establish irreparable harm because Defendant's practice of delaying competency restoration services violates Plaintiffs' due process rights and exposes them to serious risks. *See Velesaca v. Decker*, 458 F. Supp. 3d 224, 240 (S.D.N.Y. 2020) (Hellerstein, J.) (granting preliminary injunction where plaintiffs showed irreparable harm based on deprivation of liberty and exposure to serious medical risks, *e.g.*, COVID-19, while detained); *see also Arias v. Decker*, 459 F. Supp. 3d 561, 571 (S.D.N.Y. 2020) (collecting cases in the Second Circuit holding that an alleged violation of a constitutional right establishes irreparable harm).

Plaintiffs have established that they suffer the specific, concrete injury of being denied timely competency restoration services. PI Mot. at 3–5. This denial is a constitutional injury that constitutes an irreparable harm in and of itself, *id.* at 21–22, and it affects the approximately 100 people who were found unfit to proceed to trial and committed to OMH custody for competency restoration services, and who *currently* languish on Rikers Island. Starkey Decl. ¶ 9, ECF No. 14. They wait not for days or weeks, but for months on end, because of Defendant's practice of delaying competency restoration services. [6] Defendant does not dispute that competency

---

[6] Plaintiffs R.M. and A.B. each experienced 166 days of delay before they received competency restoration services, and in the short time since the Complaint in this action was filed, at least 40 Legal Aid clients committed from February

restoration delays exist *now* and will persist, potentially without any abatement until June 2028.[7]

*See* Schatzel Decl. at ¶ 9. In fact, Defendant acknowledged at the November 13, 2025 status

conference before this Court that these delays continue to worsen. Hemmady PI Reply Decl., Ex.

A, at 12:11. Because Defendant denies Plaintiffs timely competency restoration services, Plaintiffs

face the risks of physical injury and worsened health conditions. PI Mot. at 23–24. Plaintiffs are

confined in the dangerous environment on Rikers Island, which causes them to suffer the specific,

concrete injuries of unmet mental health treatment needs, physical injuries, and reduced likelihood

of successful competency restoration. *Id*. at 7–15.

Defendant's argument that the dangers from being confined on Rikers Island are "too

speculative" is meritless. PI Opp. at 34. Unlike the cases Defendant cites,[8] Plaintiffs here offer

---

[7] 2025 to May 2025 waited five or six months before being transferred to an OMH hospital. More Legal Aid clients currently face similar delays while awaiting competency restoration. Hemmady PI Reply Decl. ¶¶ 7-8. These experiences are worse than the median delay of 81 days observed in 2024 and described in Plaintiffs' opening brief for the instant motion. But even in 2024, 130 people waited longer than 100 days, and eleven waited longer than six months. PI Mot. at 21.

[7] Although Defendant complains that Plaintiffs do not credit their recent initiatives, those efforts have not eliminated the approximately 100-person waitlist.

[8] Defendant cites factually inapposite cases where courts determined that the plaintiffs' extremely thin evidentiary presentation was insufficient to establish irreparable harm. *See, e.g.*, *Dean v. DeBejian*, 2022 WL 17842983, at *3 (N.D.N.Y. Dec. 22, 2022) (holding plaintiff did not introduce evidence that he was improperly denied requests for photocopies and did not show likelihood of denial of access to legal copies and mail "despite his ability to satisfy the requirements of the applicable DOCCS Directives"); *Agostini v. Backus*, 2015 WL 1579324, at *3 (W.D.N.Y. Apr. 9, 2015) (holding that plaintiff's concern about future retaliation, based on information he heard "through the prison grapevine," was not sufficient for irreparable harm showing); *Ward v. LeClaire*, 2007 WL 1532067, at *2 (N.D.N.Y. May 24, 2007) (holding that plaintiff did not identify "with any certainty how, when, or where he will be retaliated against" and therefore his claim of future threats and harassment was so too speculative). In *T-Mobile Ne. LLC. v. Water Auth. of W. Nassau Cnty*, 249 F. Supp. 3d 680, 683 (E.D.N.Y. 2017), the court held that a service provider's "assertions that lack of access to the Antenna Facilities '*could* result in dropped calls' and that there 'may be impaired wireless services for anyone seeking to contact e911" were too speculative to constitute irreparable harm. *Id.* The court did, however, note that it may have found differently "if plaintiff had presented evidence of customer complaints about dropped calls or poor service in the area around the Antenna Facilities." *Id.* at 684. Here, Plaintiffs have done precisely as the Eastern District of New York urged by putting forth specific complaints of harm to Plaintiffs and other similarly situated individuals. As such, *T-Mobile* supports, rather than defeats, Plaintiffs' irreparable harm argument. The central holding of another case cited by Defendant, *JSG Trading Corp. v. Tray-Wrap Inc.*, 917 F.2d 75, 79 (2d Cir. 1990) is that the plaintiff could not demonstrate irreparable harm because its injuries were "compensable through money damages." The Second Circuit secondarily noted that the plaintiff's allegation of future harm was undercut by the defendant's presentation of "substantial current assets and sound financial health." *Id.* at 80. In contrast, Plaintiffs have put forth evidence of harm, and Defendant has not shown that conditions on Rikers Island highlighted by Plaintiffs will change.

extensive evidence of the dangers of incarceration through current data on chronic disruptions in medical and mental health services, rampant violence, and the neglect and deaths of people with psychiatric disabilities on Rikers Island, including in closely monitored, highly specialized mental health units where people with CPL 730 orders have been held. PI Mot. at 7–15. In addition to these data, Plaintiffs offer the expert declaration of Dr. Lauren Kois, which addresses the harmful effects of delaying or denying adequate care on the likelihood of successful competency restoration for *all* individuals confined on Rikers Island pending competency restoration services.[9] PI Mot. at 7–15; *see also* Kois Decl. ¶¶ 10, 75. Courts routinely consider similar evidence of harm on a preliminary injunction motion. In *Velesaca v. Decker*, 458 F. Supp. 3d 224, 240 n.9 (S.D.N.Y. 2020), for example, the Court held that plaintiffs established irreparable harm, citing, among other evidence, plaintiffs' presentation of a report showing "a track record of New York City area facilities 'denying people access to vital medical and mental health treatment.'" *See also Arias*, 459 F. Supp. 3d at 569 (granting a preliminary injunction, noting data reports on COVID deaths and a declaration from an epidemiologist that people in detention facilities are at higher risk of COVID infection); *V.W. ex rel. Williams v. Conway*, 236 F. Supp. 3d 554, 570–71, 588–89 (N.D.N.Y. 2017) (granting a preliminary injunction, noting "convincing evidence" provided through a doctor's declaration of the "serious risk of short- and long-term psychological damage" of "continued use of solitary confinement on juveniles").[10]

---

[9] Defendant misrepresents the opinions of Dr. Lauren Kois by selectively quoting from careful language in her declaration. PI Opp. at 35. Based on her experience and a literature review, Dr. Kois opines that it is possible to "infer that defendants experiencing progressively longer Duration of Untreated Psychosis face reduced likelihood of successful restoration compared to what their prospects would have been with timely treatment." Kois Decl. ¶ 62.

[10] Defendant asserts that two cases that Plaintiffs cite in their opening brief—*V.W.* and *Reynolds v. Giuliani*, 35 F. Supp. 2d 331 (S.D.N.Y. 1999)—"are not applicable to this case" because of "specific circumstances," PI Opp. at 36–37, without adequately explaining what bearing those "special circumstances" should have on this Court's preliminary injunction inquiry.

Defendant does not meaningfully contest that these constitutional, physical, and mental injuries will continue absent an injunction. As to the constitutional injury, though Defendant alludes to efforts purportedly underway to reduce delays, *see* PI Opp. at 11–12, Defendant offers little detail about the expected time and effect of these anticipated improvements.[11] As to the physical injuries, Defendant offers no evidence of any newly implemented measures that will alter the current state of affairs on Rikers Island. *Cf. Fisher v. Goord*, 981 F. Supp. 140, 168–69 (W.D.N.Y. 1997) (finding plaintiff did not establish irreparable harm because even if her testimony was credible, defendants took multiple steps rendering any further possibility of harm speculative). And although Defendant strains to characterize Plaintiffs' case as one "concerning *prison* conditions" whose allegations the Court should view with "caution," PI Opp. at 34 (emphasis added), the analogy is inapt: this lawsuit does not challenge prison or jail conditions or management, nor do Plaintiffs seek an injunction on those subjects.[12] Plaintiffs instead challenge OMH's failure to timely provide competency restoration services to people found unfit to proceed in their criminal proceedings and committed to OMH's custody; Plaintiffs' exposure to abysmal jail conditions on Rikers Island is merely a result of that failure.

Plaintiffs have alleged specific concrete and *current* injuries that are not remote or speculative, but actual and imminent, arising from OMH's ongoing failure to provide timely competency restoration services, leaving individuals to languish on Rikers Island. Plaintiffs, accordingly, establish irreparable harm.

---

[11] Defendant alludes to planned construction at the Mid-Hudson facility, which is expected to open years from now, "in or around June 2028," and offers no timeline for completion of construction at a new facility on Ward's Island. PI Opp. at 11–12.

[12] For this reason, Defendant's citation to *Fisher*, 981 F. Supp. at 167, in which prison conditions were at issue, is inapposite. In any event, in that case, the court found that the plaintiff could not establish irreparable harm in part because defendants had already undertaken specific, concrete steps to mitigate future harm, such that any further possibility of harm is speculative. *Id.* at 168–169. Here, OMH has done no such thing.

## III. PLAINTIFFS' INJUNCTION IS IN THE PUBLIC INTEREST

Granting Plaintiffs' request for a preliminary injunction is in the public interest because the public's interest in stopping the serious constitutional violations Plaintiffs suffer outweighs any financial and administrative burdens on Defendant to remedy those violations. When the government is a defendant, "harm to the opposing party and . . . the public interest merge . . . into a single inquiry." *Nken v. Holder*, 556 U.S. 418, 435 (2009). In cases involving constitutional violations like this one, "the balance of hardships tips decidedly in the plaintiff's favor" against "arguments that granting a preliminary injunction would cause financial or administrative burdens on the Government." *Averhart v. Annucci*, 2021 WL 2383556, at *16 (S.D.N.Y. June 10, 2021) (quoting *Sajous v. Decker*, 2018 WL 2357266, at *13 (S.D.N.Y. May 23, 2018)); *see also Mitchell v. Cuomo*, 785 F.2d 804, 808 (2d Cir. 1984) ("Faced with such a conflict between the state's financial and administrative concerns on the one hand, and the risk of substantial constitutional harm to plaintiffs on the other, we have little difficulty concluding . . . that the balance of hardships tips decidedly in plaintiffs' favor."). Moreover, government defendants cannot claim financial or administrative hardship when they seek to evade responsibilities they have chosen to shoulder, or when they violate the law. *See, e.g.*, *Yang v. Kosinski*, 960 F.3d 119, 136 (2d Cir. 2020) (holding that the balance of equities tipped in favor of plaintiffs, reasoning that the government's asserted "cost" of the injunction, even if non-trivial, was one New York "chose to bear" when it assumed the responsibility of regulating and holding primary elections); *Metro. Transp. Auth. v. Duffy*, 784 F. Supp. 3d 624, 696 (S.D.N.Y. 2025) ("There is generally no public interest in the perpetuation of unlawful agency action." (quoting *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)).

In this case, Plaintiffs suffer serious infringement of their constitutional rights, as they are committed in dangerous conditions for months without access to their required competency

restoration services. PI Mot. at 5–15. Defendant's primary arguments in opposition are based on their supposed inability to effectively allocate resources in order to prevent unconstitutional delays in providing competency restoration services. *See* PI Opp. at 39–41 (citing "finite budget" and "finite resources" and purported efforts to address the problem to explain why the injunction would not be in the public interest). Defendant argues that it is not possible to address these violations by "immediately" admitting every individual on the waitlist without exposing patients and staff to safety issues. *Id.* at 39. Defendant also claims that, because they are already attempting to solve the issue, the Court should not issue an injunction. *Id.* at 41. But whatever efforts Defendant is currently making, these efforts have clearly not been sufficient to solve the issue so far, and Defendant has shown no evidence that their efforts will cure the due process violations the injunction seeks to remedy.

Plaintiffs do not ask Defendant to trade one harm for another. Any injunction must remedy the due process violations Plaintiffs currently suffer without exposing them to further constitutional or statutory violations arising from overcrowding and understaffing. That Defendant has identified challenges with implementing *immediate* admission of 100 or so individuals on the waitlist all at once—relief that Plaintiffs do not request here—hardly means that putative class members cannot be admitted in phases, nor that there are no possible initiatives that can be implemented to protect Plaintiffs' due process rights to timely restoration services, while simultaneously maintaining their rights to safety in a hospital setting. As Plaintiffs allege in their Complaint, the development of assessment processes to identify people who may receive competency restoration services in a setting other than a secure hospital and community-based programming to meet that populations needs are sensible ways to reduce the waitlist without jeopardizing safety. *See* Compl. ¶ 9. Defendant's inability to meet the obligation to provide

16

treatment in a constitutional manner does not provide a basis for claiming hardship in the balancing of equities. The constitutional harms Plaintiffs suffer outweigh Defendant's concerns with managing state resources to appropriately accommodate all populations that OMH is obligated to serve.

## IV. PLAINTIFFS' PROPOSED INJUNCTION COMPLIES WITH RULE 65(d)

Defendant incorrectly argues that Plaintiffs' request for an injunction violates Federal Rule of Civil Procedure 65(d)'s specificity requirement.[13] Plaintiffs' proposed injunction is specific in identifying the action that is needed—the provision of timely and effective competency restoration services—and is similar to the injunction issued by this Court prohibiting defendants from "using or applying" challenged policies and practices in *Velesaca*. 458 F. Supp. 3d. at 243. In any event, courts are empowered under Rule 65 to craft an injunction that resolves any specificity concerns; and indeed, courts in this Circuit have routinely granted preliminary injunctions, and have ordered a remedial process to determine the proper scope of relief. *See, e.g.*, *Ligon v. City of New York*, 925 F. Supp. 2d 478, 542–43, 542 n. 455 (S.D.N.Y. 2013) (granting plaintiffs' preliminary injunction and ordering a remedial hearing to determine the scope of relief). This Court may similarly order a remedial process, or may simply modify the language of Plaintiffs' proposed injunction to include a timeliness framework and procedures that facilitate the goal of timely competency restoration, as outlined below.

*Timeframes:* Plaintiffs propose that the injunction establish timeframes by which Defendant must admit to an OMH hospital those for whom a hospital level of care is determined to be clinically necessary. In consideration of Defendant's objection that OMH currently lacks the

---

[13] Defendant cites no authority for the proposition that Plaintiffs must identify each "specific action" needed "to eliminate the waitlist" for hospital-based competency restoration services. PI Opp. at 16. It is up to Defendant to determine how to implement an injunction.

capacity to "immediately" admit every individual on OMH's waitlist, Plaintiffs propose a series of phased timeframes to begin within 30 days of the Court's order, requiring the admission of groups of individuals who have waited the longest first, until the waitlist is cleared, and thereafter requiring admission of each newly committed individual within seven days of that individual's commitment order. Plaintiffs believe that this is an area where further proceedings and discussions would benefit the Court and the parties.

*Review*: Plaintiffs propose that the injunction mandate that, within 30 days of the Court's order, Defendant conducts an independent review of every individual on the waitlist and of each individual newly committed to OMH's custody, to determine which individuals clinically require a secure hospital or a non-secure (civil) hospital bed, or, alternatively, which are appropriate for outpatient competency restoration. The review is intended to ease pressure on OMH's hospital system by off-ramping those who do not require a hospital bed. Defendant claims that they currently, and for the foreseeable future, lack the capacity to provide timely services in a hospital to all those who are committed to their care and cannot quickly establish new hospital facilities. *See* PI Opp. at 11–12. A review aimed at assessing individuals' needs is crucial to protecting class members' due process rights.

*Placement Procedures:* In conjunction with the outcome of the review, OMH shall develop a Placement Plan, within 45 days of this order, to place into a civil hospital each individual who is clinically appropriate for a civil hospital, or to place into an outpatient setting each individual who is clinically appropriate for that outpatient setting.

OMH shall place each individual recommended for a civil hospital into a civil hospital, as identified by the Placement Plan, within 60 days of the Court's order.

18

Upon identification in the Placement Plan of which individuals are appropriate for an outpatient competency restoration program, OMH shall (1) notify, within five days, the state court, defense, and prosecution that an individual is appropriate for outpatient restoration; (2) upon request of the state court, defense, and prosecution, OMH shall provide all information as may be needed to modify the individual's commitment order within five days; (3) identify community-based programs appropriate for the individual's needs; and (4) upon issuance of an amended commitment order committing the individual to OMH's custody for outpatient restoration, OMH shall refer the individual to an outpatient provider within seven days.

To the extent that Defendant objects to Plaintiffs' terms in the proposed injunction, Plaintiffs are willing to meet with Defendant and engage in a collaborative process, as urged by the Court at the November 13, 2025 status conference.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion and order Defendant to provide timely and effective competency restoration to the putative class members.

Dated: November 17, 2025           Respectfully submitted,
       New York, New York

By:    */s/ Elena Landriscina*

Elena Landriscina
Shona Hemmady
Philip Desgranges
THE LEGAL AID SOCIETY
49 Thomas Street, 10th Floor
New York, New York 10013
(212) 577-3398
elandriscina@legal-aid.org
shemmady@legal-aid.org
pdesgranges@legal-aid.org

By:    */s/ Alexis Karteron*

Alexis Karteron
WASHINGTON SQUARE LEGAL
SERVICES
CIVIL RIGHTS IN THE CRIMINAL
LEGAL SYSTEM CLINIC
245 Sullivan Street, 5th Floor
New York, NY 10012
212-998-6430
alexis.karteron@nyu.edu

By:    */s/ James I. McClammy*

James P. Rouhandeh
James I. McClammy
Diane O. Lucas
Chui-Lai Cheung
Marie Killmond
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
rouhandeh@davispolk.com
james.mcclammy@davispolk.com
diane.lucas@davispolk.com
chui-lai.cheung@davispolk.com
marie.killmond@davispolk.com

*Counsel for Plaintiffs R.M. and A.B.*

## **WORD COUNT CERTIFICATION**

The undersigned hereby certifies that this Memorandum of Law contains 6,465 words and is in compliance with Local Rule 7.1. In preparing this certification, the word-processing system that was used to prepare this document was relied upon.


*/s/ Elena Landriscina*

Elena Landriscina