Docket No. 25-cv-06667 (AKH)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

R.M., by and through next friend Elfego Maldonado Estrada, and A.D., by and through next friend Kadijah Hutchinson-McLean, on behalf of themselves and all others similarly situated,

Plaintiffs,

- against -

NEW YORK STATE OFFICE OF MENTAL HEALTH; ANN MARIE T. SULLIVAN, in her official capacity as the Commissioner of the New York State Office of Mental Health; the NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE; MICHELLE MORSE, in her official capacity as the Commissioner of the New York City Department of Health and Mental Hygiene; and NEW YORK CITY HEALTH AND HOSPITALS CORPORATION,

Defendants.

**DEFENDANTS THE NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE, MICHELLE MORSE, IN HER OFFICIAL CAPACITY AS THE COMMISSIONER OF THE NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE, AND NEW YORK CITY HEALTH AND HOSPITALS CORPORATION REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**

***MURIEL GOODE-TRUFANT***
*Corporation Counsel of the City of New York*
*Attorney for Defendants the New York City Department of Health and Mental Hygiene, Michelle Morse, in her official capacity as the Commissioner of the New York City Department of Health and Mental Hygiene, and New York City Health and Hospitals Corporation*
100 Church Street
New York, N.Y. 10007

*Of Counsel: Kendra Elise Riddleberger*
Tel: (212) 356-4377

*Ann-Marie Tesar*
Tel: (212)-356-1106

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

ARGUMENT

POINT I

PLAINTIFFS LACK STANDING AGAINST MUNICIPAL DEFENDANTS ........ 2

POINT II

PLAINTIFFS SUIT AGAINST MUNICIPAL DEFENDANTS IS BARRED BY THE *ROOKER-FELDMAN* DOCTRINE ........ 8

POINT III

PLAINTIFFS FAIL TO STATE A CLAIM PURSUANT TO THE ADA AND REHAB ACT AGAINST MUNICIPAL DEFENDANTS ........ 9

CONCLUSION ........ 14

## TABLE OF AUTHORITIES

**Cases** **Pages**

*Davis v. Shah*,
821 F.3d 231 (2d Cir. 2016)....................................................9, 10

*Day v. District of Columbia*,
894 F. Supp. 2d 1 (D.D.C. 2012)....................................................11

*Disability Advocates, Inc. v. Paterson,*
653 F. Supp. 2d 184 (E.D.N.Y. 2009) ....................................................12, 13

*Dyous v. Dep't of Mental Health*
2024 U.S. Dist. LEXIS 45941 (D. Conn. March 15, 2024)....................................................11, 12

*Frederick v. Dep't of Pub. Welfare*,
157 F. Supp. 2d 509 (E.D. Pa. 2001) ....................................................11

*Joseph S. v. Hogan*
561 F. Supp. 2d 280 (E.D.N.Y. 2008) ....................................................10

*Mantena v. Johnson*,
809 F.3d 721 (2d Cir. 2015)....................................................7

*In re Matthew P. v. Neifeld*,
196 N.Y.S.3d 647 (Sup. Ct., Putnam Cnty, Sept. 5, 2023)....................................................13

*McKithen v. Brown*,
481 F.3d 89 (2d Cir. 2007)....................................................9

*Messier v. Southbury Training Sch.*,
562 F. Supp. 2d 294 (D. Conn. 2008)....................................................4, 6

*Olmstead v. L.C. by Zimring*,
527 U.S. 581 (1999)....................................................9, 10, 11, 12, 13, 14

*People v. Betty Y.*
39 Misc. 3d 579 (Sup. Ct., Kings County 2013)....................................................5

*Shalom Pentecostal Church v. Acting Sec'y U.S. Dep't of Homeland Dec.*,
783 F.3d 156 (3d Cir. 2015)....................................................7

*State Office of Prot. & Advocacy for Persons with Disabilities v. Connecticut*,
706 F. Supp. 2d 266 (D. Conn. March 31, 2010) ....................................................4

*Steward v. Young*,
787 F. Supp. 3d 476 (W.D. Tex. 2025)....................................................4

**Cases** **Pages**

*Summers v. Louisiana*,
2022 U.S. Dist. LEXIS 174446 (M.D. La. Sept. 27, 2022) ........ 7, 8

*Timothy B. v. Kinsey*,
2024 WL 1350071 (M.D.N.C. Mar. 29, 2024) ........ 11

**Statutes**

28 CFR 35.130(d) ........ 9

CPL 730 ........ 1, 3, 5, 13

CPL 730.10(8) ........ 5

CPL 730.40(1) ........ 1, 3, 4, 7

Federal Rules of Civil Procedure 12(b)(1) ........ 1

Federal Rules of Civil Procedure 12(b)(6) ........ 1

New York Criminal Procedure Law 730 ........ 1

**Other Authorities**

*https://omh.ny.gov/omhweb/forensic/dfs-guidance.pdf* (last accessed December 18, 2025) ........ 5

**PRELIMINARY STATEMENT**

Defendants the New York City Department of Health and Mental Hygiene ("DOHMH"), Michelle Morse, in her official capacity as the Commissioner of the New York City Department of Health and Mental Hygiene, and New York City Health and Hospitals Corporation ("HHC") (together "Municipal Defendants") respectfully submit this Reply Memorandum of Law in further support of their Motion to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ("Municipal Defs.' Motion").

Plaintiffs bring this suit pursuant to the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("Rehab Act") alleging that Municipal Defendants have failed to provide treatment for individuals subject to New York Criminal Procedure Law 730 ("CPL 730") "in the most integrated setting appropriate to their needs," which Plaintiffs argue would be outpatient care. Plaintiffs now attempt to reframe their Complaint to allege that their actual claim is the "lost opportunity" to receive outpatient care because Municipal Defendants do not provide a treatment recommendation when conducting a competency exam pursuant to CPL 730. Plaintiffs lack standing to bring this suit and have also failed to state a claim pursuant the ADA and the Rehab Act, and therefore this matter should be dismissed as to Municipal Defendants.

As set forth in Municipal Defs.' Motion, Plaintiffs lack standing to bring suit as they can neither show that Municipal Defendants have caused them any harm, nor can they show that Municipal Defendants have the ability to redress Plaintiffs' allegations because Municipal Defendants do not have any role in determining treatment for Plaintiffs. Plaintiffs argue that because Municipal Defendants do not give a recommendation for a treatment setting, they are denied the opportunity for outpatient services if they are found incompetent to stand trial. This is simply incorrect. Plaintiffs concede that CPL 730.40(1) expressly states that, upon the consent of the district attorney, a person found incompetent to stand trial may receive treatment on an

outpatient basis. Contrary to Plaintiffs' arguments, Plaintiffs are not denied outpatient services due to Municipal Defendants' lack of a treatment recommendation, as they have the opportunity to request outpatient treatment during the criminal proceedings. Therefore, there is no causal nexus between Municipal Defendants' acts or omissions and their alleged harm. Further, their alleged harm is not redressable because, even if Municipal Defendants provided a treatment recommendation, it would not necessarily result in Plaintiffs receiving outpatient treatment. As such, Plaintiffs lack standing to bring this suit and it should be dismissed as to Municipal Defendants.

Plaintiffs attempt to recast their claims in order to avoid dismissal pursuant to the *Rooker-Feldman* doctrine, but this argument is unconvincing, as it is clear from their Complaint that they are seeking to alter their state court commitment orders so that they may receive outpatient care. Finally, Plaintiffs have failed to state a claim under the ADA and the Rehab Act, because they have not shown that a state treatment professional determined that community placement is appropriate for Plaintiffs. Additionally, even assuming that Plaintiffs are not required to put forward a state treatment professional or any treatment professional as to whether outpatient care is appropriate, their claim is still not sufficiently pled. As such, Plaintiffs' claims against the Municipal Defendants should be dismissed.

## ARGUMENT

### POINT I

### PLAINTIFFS LACK STANDING AGAINST MUNICIPAL DEFENDANTS

Plaintiffs inexplicably argue that Municipal Defendants are responsible for what Plaintiffs refer to as "reflexive commitment" to a hospital because Municipal Defendants have "denied them the opportunity to receive services in the most integrated setting appropriate to their needs."

Plaintiffs' Memorandum in Opposition ("Pls' Memo in Opp") at p. 8. As an initial matter, this alleged injury is at odds with their Complaint, which states that both Plaintiffs are "qualified for community-based placement" and that "[t]he failure to provide this outpatient program… is discriminatory and unlawful." Compl. at ¶¶ 40-41. It is clear from a plain-reading of the Complaint that Plaintiffs allege that their harm is that they have been ordered to receive inpatient care, as opposed to outpatient care, for competency restoration. *See generally* Compl. Plaintiffs' opposition concedes that Municipal Defendants do not have any control over Plaintiffs' treatment and that, even if they provided a treatment recommendation it would not result in Plaintiffs receiving outpatient treatment, as that is up to the criminal court and requires the consent of the district attorney. Pls' Memo in Opp at pp. 7; 11. Confronted with these facts, Plaintiffs now attempt to redefine their alleged harm as the "lost opportunity" to receive outpatient care due to Municipal Defendants offering no recommendation for treatment when completing the examination report pursuant to CPL 730.

However, this allegation is curious as Plaintiffs have not been denied an opportunity to receive outpatient care for competency restoration. As CPL 730.40(1) states, and Plaintiffs admit, when a felony complaint has been filed against a criminal defendant, as has occurred here, the criminal defendant may, "upon the consent of the district attorney be committed to the custody of the commissioner for care and treatment on an out-patient basis." Therefore, both Plaintiffs in this matter had the opportunity to seek outpatient treatment once they were found incompetent to stand trial. Plaintiffs have put forward no evidence as to whether Plaintiffs requested outpatient treatment during their criminal court proceeding, much less whether the District Attorney consented. *See generally* Compl. Instead, Plaintiffs conclusively state that as Municipal Defendants did not provide a recommendation as to treatment Plaintiffs were denied the

opportunity to receive outpatient care. Such an argument ignores the clear language of CPL 730.40(1), which allows criminal defendants found incompetent to stand trial to request to receive care in an outpatient setting.

Plaintiffs argue that there is a causal nexus between Municipal Defendants' conduct and the alleged injury because Municipal Defendants are required to provide a recommendation as to treatment pursuant to the integration mandate of the ADA and Rehab Act. Plaintiffs cite several cases for this proposition, but none of them are analogous to the present situation because they all involved situations where Plaintiffs had *no* opportunity to seek outpatient care. *See Messier v. Southbury Training Sch.*, 562 F. Supp. 2d 294, 338 (D. Conn. 2008) (the Court found that where Plaintiffs were residents of an institution for the mentally disabled, the institution had violated the integration mandate of the ADA and the Rehab Act because they were not providing class members and their guardians the ability to consider community placement); *Steward v. Young*, 787 F. Supp. 3d 476, 763 (W.D. Tex. 2025) (the Court held that Texas had failed to administer long term care for people with disabilities in a manner that allowed those who were in or in serious risk of entering nursing facilities to make an informed choice of whether they could transition to an integrated setting in the community); *State Office of Prot. & Advocacy for Persons with Disabilities v. Connecticut*, 706 F. Supp. 2d 266, 284 (D. Conn. March 31, 2010) (the Court found that Plaintiffs, people with disabilities who resided in or were at risk of entry into three nursing homes, had standing where Connecticut failed to administer its mental health system in a manner where they could consider outpatient care.)

This is not analogous to the present case, where Plaintiffs, after being found incompetent, had the opportunity to seek outpatient treatment pursuant to 730.40(1) during the criminal court proceedings. The fact that Municipal Defendants did not provide a treatment recommendation as

part of the competency exam did not prevent Plaintiffs from requesting outpatient care for competency restoration from the Court. The case *People v. Betty Y.* 39 Misc. 3d 579 (Sup. Ct., Kings County 2013) is particularly instructive in this regard. In *Betty Y.* the criminal defendant was found incompetent to stand trial pursuant to CPL 730. *See id*. The examination report concluded that the criminal defendant required "continued mental health treatment" without giving a recommendation as to whether that treatment should be provided on an inpatient or outpatient basis. *Id*. at 580. Defense counsel then moved for outpatient treatment, the District Attorney consented to outpatient treatment, and the Court ordered outpatient treatment. *See id*.

Moreover, the OMH Guidance for Implementation of Outpatient Competency Restoration further indicates that the absence of an official treatment recommendation by the Municipal Defendants does not foreclose an individual's ability to receive outpatient restoration. *See* *https://omh.ny.gov/omhweb/forensic/dfs-guidance.pdf* (last accessed December 18, 2025). The guidance identifies various factors to be considered when determining whether outpatient restoration is appropriate, including an individual's substance use, medical needs and "dangerousness to self or others," and advises competency evaluators only to include information relevant to the enumerated factors when it becomes available in the course of the competency evaluation. *Id.* It does not direct competency evaluators to opine as to a proper course of treatment, nor does CPL 730.10(8) which clearly sets forth the limited elements that should be included in the examination report. A Municipal Defendants' examination report documenting the defendant's history and clinical information, including any recent substance abuse or unique medical needs, can provide the court – or, upon referral by the court, the OMH Division of Forensic Services - with sufficient information to determine whether outpatient restoration is a viable option.

As the above and *Betty Y.* makes clear, there is no "lost opportunity" for Plaintiffs to receive outpatient care because Municipal Defendants do not provide a treatment recommendation. As

such, the present case is distinguishable from *Messier* because, there the medical professionals in question were the ones treating the plaintiffs and, absent their recommendation for community placement, there was no opportunity for plaintiffs to receive outpatient treatment. 562 F. Supp 2d at 329. That is simply not the case here and therefore there is no causal connection between Municipal Defendants not providing a treatment recommendation and Plaintiffs' alleged harm of the loss of opportunity to receive outpatient treatment for competency restoration. As such, Plaintiffs lack standing against the Municipal Defendants.

Plaintiffs admit that, even if their relief was granted, it would still be the criminal court, as well as the district attorney, that would determine whether a criminal defendant found incompetent to stand trial would be eligible for outpatient services. *See* Pls' Memo in Opp at p. 11. In fact, they go on to say that whether a person ultimately receives outpatient services is "irrelevant." *See id*. As explained above, this is inconsistent with the harm pled in their Complaint. *See generally* Compl. Plaintiffs' Complaint alleges that they are "qualified to receive competency restoration services in the community with appropriate services and supports" and they seek a permanent injunction against Municipal Defendants "to promptly take all necessary and appropriate actions to serve Integration Plaintiffs and class members in the most integrated setting appropriate to their needs." Compl. at ¶¶ 14-15; Prayer for relief (e). It is therefore clear from the Complaint, that Plaintiffs seek to receive outpatient care, as opposed to the inpatient care they were ordered to receive pursuant to the state court. Plaintiffs' attempt to alter this injury to the "discrete injury of being denied the opportunity for outpatient services" is unavailing and it is apparent that this injury cannot be redressed by Municipal Defendants.

However, even if this is the injury pled in Plaintiffs' Complaint, they still cannot show redressability because there is no lost opportunity. As discussed above and at length in Municipal

Defs' Motion, criminal defendants who have been found incompetent to stand trial have the opportunity to request outpatient services. *See* CPL 730.40(1). To put it plainly, there is simply no lost opportunity and therefore Plaintiffs cannot show redressability because there is no harm.

As such, none of the cases Plaintiffs cite are applicable to this matter because they all involved Plaintiffs where relief was not available to them, *at all*, even if that relief was not their ultimate objective. *See Mantena v. Johnson*, 809 F.3d 721, (2d Cir. 2015) (holding that Plaintiff had standing because there was no opportunity for her to challenge the revocation of her I-140 petition, which led to the automatic denial of her green card application); *Shalom Pentecostal Church v. Acting Sec'y U.S. Dep't of Homeland Dec.*, 783 F.3d 156, 161-162 (3d Cir. 2015) (holding that the likelihood of Plaintiff succeeding in an eventual adjustment of status was irrelevant to determine whether he had standing to challenging the denial of a visa petition, as these were two separate proceedings).

Instead, the present case is akin to *Summers v. Louisiana*, 2022 U.S. Dist. LEXIS 174446, at *3-4 (M.D. La. Sept. 27, 2022) where Plaintiffs were committed to the East Louisiana Mental Health System ("ELMHS") per court orders, including a Plaintiff who was found incompetent to stand trial. All of the Plaintiffs claimed that they were denied access to community services and programs and were instead being "warehoused" at ELMHS. *See Id.* at *10-11. The Court explained that Defendants had not "warehoused Plaintiffs at ELMHS because Defendants played no role in their commitment to ELMHS and [had] no ability to release them" and that their confinement was due to a Louisiana state court order. *Id.* at *61. The Court then held that "[i]f institutionalization were the alleged injury in fact, that harm clearly cannot be 'fairly traceable' to the challenged action of the defendant" as the institutionalization was "not the result of anything Defendants did nor did not do." *Id.* at *61-62. This is precisely the case in this matter, as Plaintiffs

are committed to the custody of OMH on an inpatient basis, as opposed to an outpatient basis, for competency restoration pursuant to state court orders and not any act or omission of Municipal Defendants.

Just as Plaintiffs now argue their goal is not their release into outpatient care, Plaintiffs in *Summers* alleged that their actual claim was not a challenge to the institutionalization of Plaintiffs, but to have Defendants comply with the ADA and Rehab Act by enhancing Plaintiffs' eligibility for accelerated release from ELMHS. *Id*. at *62. In response to this request for relief, the Court stated that "the main question before the Court is whether that harm is likely to be redressed by the plaintiff's requested relief." *Id*. (internal citations omitted). The Court correctly held that Plaintiffs had not met their burden because they "failed to adequately allege that granting the relief they request would affect them since none of them are currently qualified for placement in the community by any court nor have they alleged that any treatment professional has recommended them for community release." *Id*. at *64. The same is true here. Both Plaintiffs are under state court orders of commitment to appropriate facilities and therefore are not eligible for outpatient treatment. As such, just as in *Summers*, Plaintiffs cannot show redressability, and they lack standing to bring this claim. Therefore, Plaintiffs' claims against the Municipal Defendants should be dismissed for lack of standing.

## POINT II

## PLAINTIFFS SUIT AGAINST MUNICIPAL DEFENDANTS IS BARRED BY THE *ROOKER-FELDMAN* DOCTRINE

Plaintiffs claim that their suit is not barred by the *Rooker-Feldman* doctrine because they are not seeking review of or rejection of the state court commitment orders. While it is true that Plaintiffs' Complaint does not explicitly call for a review and rejection of the state court commitment orders, Plaintiffs' argument that their injury is not caused by the state commitment

order is unavailing. Plaintiffs' Complaint plainly states that Plaintiffs "are qualified to receive competency restoration services in the community" and that they "desire[] such services," but are prevented from receiving them due to Municipal Defendants failure to provide a treatment recommendation. Compl. at ¶¶ 14-15. Plaintiffs' Complaint puts forward the proposition that Plaintiffs' care "in the most integrated setting" means outpatient care. *See id* at ¶¶ 14-15; 40-41. Plaintiffs then seek a permanent injunction against Municipal Defendants "to promptly take all necessary and appropriate actions to serve Integration Plaintiffs and class members in the most integrated setting appropriate to their needs." *Id*. at Prayer for relief (e). This makes plain that, despite their arguments to the contrary, Plaintiffs' alleged harm is purportedly "caused by" the state court proceedings as that is what led to their commitment to inpatient care. *See McKithen v. Brown*, 481 F.3d 89, 98 (2d Cir. 2007). As such, Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine and should be dismissed as to the Municipal Defendants.

## POINT III

## PLAINTIFFS FAIL TO STATE A CLAIM PURSUANT TO THE ADA AND REHAB ACT AGAINST MUNICIPAL DEFENDANTS

Plaintiffs' claims[1] are based in part on the integration mandate of the ADA, which provides that "a public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 CFR 35.130(d). Pursuant to the integration mandate, the "unjustified institutional isolation of persons with disabilities is, in and of itself, a prohibited form of discrimination." *Davis v. Shah*, 821 F.3d 231, 260-61 (2d Cir. 2016) (citing *Olmstead v. L.C. by Zimring*, 527 U.S. 581, 600 (1999) (internal

[1] In an about face that appears to contradict the Complaint, Plaintiffs now state that they "do not assert a failure-to-accommodate claim on behalf of the Integration Class against Municipal Defendants, though they do assert one against OMH Defendants on behalf of the Delays Class." Opp. At 21 (citations omitted). As such, any failure-to-accommodate claim alleged against the Municipal Defendants should be dismissed.

quotations omitted)). To support an integration mandate claim, a plaintiff must allege that: (1) the State's treatment professionals determined that community-based treatment is appropriate for plaintiffs; (2) that plaintiffs do not oppose such treatment; and (3) that the community-based treatment can be reasonably accommodated, taking into account the resources available to the State and the needs of others with similar disabilities. *Davis*, 821 F.3d at 262; *see also Olmstead*, 527 U.S. at 617.

To escape the glaring infirmities in the Complaint that Plaintiffs have not pled that *any* treatment professional has determined that community placement is appropriate here, and that both named Plaintiffs have valid orders of commitment from a criminal court, Plaintiffs claim that there is no need for them to allege that a state treatment professional has determined that outpatient restoration is suitable for them. But Plaintiffs ignore Municipal Defendants' cited authority which is directly on point, and rely on inapposite cases, almost all of which are outside the Second Circuit and none of which are controlling.

To get around the clear *Olmstead* requirement that a State treatment professional has determined that community-based treatment would be appropriate, Plaintiffs argue that "federal courts have firmly rejected the argument that a *state* treatment professional's determination is required for an Olmstead claim." Pls' Memo in Opp. at p. 18 (emphasis in original) (citing cases). Plaintiffs put forward one Second Circuit case for this proposition, *Joseph S. v. Hogan* 561 F. Supp. 2d 280, 293 (E.D.N.Y. 2008). While the Court in *Joseph S.* did "reject defendants' argument that Olmstead requires that the state's mental health professionals be the ones to determine that an individual's needs may be met in a more integrated setting[,]" the Court did not dispense with the requirement that a treatment professional deem community-based treatment appropriate. *See id*. Instead, the Court found that Plaintiffs had standing in part because the Complaint sufficiently pled

that "a professional determination that the clinical needs of these individuals may be met in an integrated community-based setting." *Id*.

Plaintiffs provide a litany of other, out of circuit cases for this same proposition, that a state treatment professional is not required to find that community placement is appropriate for plaintiffs, but there must be a finding by a treatment professional. *See Timothy B. v. Kinsey*, 2024 WL 1350071, at * 40-41 (M.D.N.C. Mar. 29, 2024) (Plaintiffs' Complaint provided "sufficient factual detail" to support allegation that community-based placement was appropriate, including recommendations from treatment providers that such placement was appropriate); *Day v. District of Columbia*, 894 F. Supp. 2d 1, 24 (D.D.C. 2012) (Plaintiffs, individuals with disabilities covered by Medicaid and alleging they were being unnecessarily institutionalized, sufficiently alleged that "'health-care professionals' ha[d] determined that community-based treatment is appropriate" in order to survive a motion to dismiss); *Frederick v. Dep't of Pub. Welfare*, 157 F. Supp. 2d 509, 540 (E.D. Pa. 2001) (Court rejected defendants' argument that certain named plaintiffs, institutionalized adults with mental disabilities, did not meet *Olmstead* requirements where it was clear that they had been recommended for community placement, but "a formal recommendation for discharge ha[d] not been made because the treatment professional believed that an appropriate community placement was not available").

Recently, the District of Connecticut dealt with a matter that is factually similar to this case in *Dyous v. Dep't of Mental Health* 2024 U.S. Dist. LEXIS 45941 (D. Conn. March 15, 2024). In *Dyous*, plaintiffs were individuals who were acquitted by Connecticut state courts after pleading the affirmative defense of not guilty by reason of mental disease or defect in their criminal cases. Their lawsuit named three state entity defendants for violations of the ADA and the Rehab Act. *Id*. at *4-5. Among other things, the *Dyous* plaintiffs claimed, like the Plaintiffs here, that

defendants violated the ADA and the Rehab Act by failing to provide "appropriate, integrated community services" and by "discriminating against class members by failing to provide them with community-based services in the most integrated setting appropriate to their needs." *Id*. at *18-19.

However, the *Dyous* Court held that "[w]ithout an allegation that a treatment professional has determined that Plaintiffs are capable of living and being fully treated outside of a hospital setting – *i.e.,* that conditional release is medically appropriate – Plaintiffs cannot state a claim for relief under the ADA's or RA's integration mandates." *Id*. at *48. Therefore, even if, *arguendo*, the requirement was only to show a treatment professional recommended community-based treatment, which Municipal Defendants do not concede, Plaintiffs have not pled that Plaintiffs have received a recommendation from *any* treatment provider that they are qualified for outpatient care for competency restoration. *See generally* Compl. Therefore, even under the lower standard they argue, they have failed to properly plead an *Olmstead* violation.

Apparently realizing this, Plaintiffs then argue that, in fact, there is no need for them to put forward *any* recommendation from *any* treatment provider in order to plead an *Olmstead* violation. For this proposition, Plaintiffs rely heavily on *Disability Advocates, Inc. v. Paterson*, which did find that a state treatment professional's determination was not required to show an *Olmstead* violation. 653 F. Supp. 2d 184, 259 (E.D.N.Y. 2009). However, the Court in *Disability Advocates, Inc.* made clear that Plaintiffs had to still plead evidence that they were qualified for services in the community. *See id*. The Court found that "DAI has presented persuasive evidence from a variety of sources" in order to show that Plaintiffs were "qualified to receive some services in the community." *Id*. Despite their argument to the contrary, Plaintiffs have failed to do the same here.

In this matter, Plaintiffs have not included "persuasive evidence" in their Complaint and instead simply state, in a conclusory fashion, that Plaintiffs are "qualified for community-based placement." Compl. at ¶¶ 14-15; 40-41. Plaintiffs spend only four paragraphs of their 35-page Complaint discussing Plaintiffs' eligibility for outpatient services. *See* Compl. at ¶¶ 14-15; 40-41. Plaintiffs argue that both Plaintiffs previously received treatment in the community, and that this is evidence that they can now receive outpatient competency restoration. However, this argument fails as to R.M., as there is no evidence that he received similar treatment in the community; there is only evidence that "he had *sought* medical treatment before he was arrested." Compl. at ¶ 40 (emphasis added). Therefore, contrary to the Plaintiffs in *Disability Advocates, Inc.* Plaintiffs have not "presented persuasive evidence from a variety of sources" to show that they are qualified to receive services in the community. 653 F. Supp. 2d at 259. Municipal Defendants, again, do not concede that the standard in *Disability Advocates, Inc.* is controlling, however, even if the Court were to find that it is, Plaintiffs still would not have made out an *Olmstead* claim under this standard.

Municipal Defendants maintain that *Davis* makes clear that the Second Circuit Court of Appeals recognizes that Plaintiffs must plead that a state treatment professional has determined that community-based treatment is appropriate. 821 F.2d at 261. Therefore, this case follows the holding from *In re Matthew P. v. Neifeld*, 196 N.Y.S.3d 647, 661-62 (Sup. Ct., Putnam Cnty, Sept. 5, 2023). As explained in Municipal Defendants' Motion, that case involved a plaintiff who was under a court order pursuant to CPL 730 to receive treatment at an Office for People with Developmental Disabilities ("OPWDD") facility, and who challenged the delay in transferring him to such a facility from Putnam County Correctional Facility. *See id*. The court rejected Plaintiffs' ADA and Rehab Act claims and found that it was "inaccurate as a matter of law" that the

Defendants' failure to place Plaintiff in a "community residence[]" violated the integration mandate where "[t]he state's treatment professionals had not determined that community placement was appropriate for Matthew." *Id*. at 662. That is precisely the case here, as well, and Plaintiffs fail to address this case, in any manner, beyond a conclusory dismissal that it does not consider the same case law that Plaintiffs cite in their opposition. Memo in Opp at p. 19. As this case is directly on point, such an argument is unavailing. Just as in *In re Matthew*, Plaintiffs have failed to plead a violation of the *Olmstead* mandate because they have not put forward a state treatment professional's determination that outpatient care is appropriate for Plaintiffs. As such, Plaintiffs claims should be dismissed against the Municipal Defendants.

**CONCLUSION**

For the foregoing reasons and those set forth in Municipal Defendants' Motion, Municipal Defendants respectfully request that their motion to dismiss the Complaint be granted in its entirety and that the Complaint be dismissed as to Municipal Defendants, and that they be awarded such other and further relief as this Court deems just and proper.

Dated: New York, New York
December 18, 2025

**MURIEL GOODE-TRUFANT**
Corporation Counsel of the
City of New York
Attorney for Municipal Defendants
100 Church Street
New York, New York 10007
(212) 356-4377

By: _*/s/ Kendra Elise Riddleberger*___
Kendra Elise Riddleberger
Assistant Corporation Counsel

*/s/ Ann-Marie Tesar*_____
Ann-Marie Tesar
Assistant Corporation Counsel

**CERTIFICATION PURSUANT TO RULE 7.1 (c) OF THE LOCAL RULES OF THE UNITED STATES DISTRICT COURTS FOR THE SOUTHERN AND EASTERN DISTRICTS OF NEW YORK**

According to Microsoft Word 365, the portions of the memorandum of law that must be included in a word count contains 4,370 words, and complies with the Court's Individual Rule 2(C), which does not impose a page limit for briefs.

Dated:	December 18, 2025
	New York, New York

										MURIEL GOODE-TRUFANT
										Corporation Counsel of the
										  City of New York
										Attorney for Municipal Defendants
										New York, New York 10007
										(212) 356-4377
										kriddleb@law.nyc.gov


							By:	*/s/ Kendra Elise Riddleberger*
										Kendra Elise Riddleberger
										*Assistant Corporation Counsel*