

49 THOMAS STREET  NEW YORK, NY 10013  TEL: 212-577-3300   http://www.legalaidnyc.org

**Alan Levine**
*President*

**Twyla Carter**
*Attorney-in-Chief*

**Justine M. Luongo**
*Chief Attorney*
Criminal Practice

**Philip Desgranges**
*Attorney-in-Charge*
Law Reform and Special Litigation

**VIA ECF**

February 12, 2025

Judge Alvin K. Hellerstein
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: *R.M. v. New York State Office of Mental Health*, C.A. No. 25-cv-06667 (AKH)

Dear Judge Hellerstein,

Plaintiffs respectfully submit this letter to identify and explain relevant provisions of New York Criminal Procedure Law ("CPL") in response to questions raised by the Court at the oral argument held on February 5, 2026 on OMH Defendants' and Municipal Defendants' (collectively "Defendants") Motions to Dismiss. These citations undisputedly do not bear on the sufficiency of Plaintiffs' claims, which are well-pled.[1] Plaintiffs provide the statutory citations given the Court's interest in securing orders that result in a defendant's confinement on Rikers Island.

The questions raised by the Court included: (1) whether a state court determines where a defendant should receive competency restoration services in an inpatient or outpatient setting at the outset of a criminal matter, at the same time that the court sets bail or other conditions to secure a defendant's return to court (Oral Arg. Tr., Feb. 5, 2026 ("Tr.") 39:3-6, 42:19-21), and (2) whether a defendant who is detained due to inability to post bail and later determined to require competency restoration services may nonetheless be eligible for competency restoration services in an outpatient setting (Tr. 33:12-16). The answer to the first question is no, and the answer to the second question is yes, in appropriate circumstances. Plaintiffs provide statutory background to provide context for the answers to those questions.

---

[1] This letter provides citations to New York Criminal Procedure Law governing arraignments, where a state court imposes a securing order, which in some cases may include the fixing of bail. *See infra* Section A. As all parties agreed at the February 5 argument, "bail is a separate analysis" from the process of commitment for competency restoration services under Criminal Procedure Law 730. Tr. 33:17-18; *see also* Tr. 31:11-19, 45:1-10.

1

### A. Securing Orders After New York State Bail Reform

New York CPL establishes a "presumption of release for most offenses and . . . procedural requirements for issuance of securing orders for certain 'qualifying offenses.'" *People ex rel. Kon v. Maginley-Liddie*, --- N.E.3d ---, 2025 WL 2955737, at *1 (N.Y. Oct. 21, 2025). At an arraignment, when a person is required to return to court in a criminal matter, the court must impose a securing order based on an "individualized determination" of flight risk and in consideration of the "kind and degree of control or restriction necessary to reasonably assure . . . return to court." CPL 510.10(1). CPL 510.10 sets forth factors the court must consider when making its determination. *Id.* Among these factors are the defendant's charges and flight history. *Id.* 510.10(1)(b), (e). However, CPL 510.10 does not authorize the court to decide whether competency restoration services—if those services are needed at all for any given defendant—must be delivered in an inpatient versus outpatient setting. Rather, a court's determination related to risk of flight under CPL 510.10, and any determinations made pursuant to CPL 730 about competency, are separate and distinct inquiries. As the New York Court of Appeals held in *People ex rel Molinaro v. Warden*, 203 N.E.3d 1194, 1195 (N.Y. 2022), a state court "may not remand a defendant into custody solely because [a CPL 730] examination has been ordered." *See also id.* at 1197 (holding that "the court has no authority beyond that expressly granted by CPL article 730").

Under CPL 510.10, the court must explain the basis for its individualized determination of flight risk and its choice of a securing order in writing or on the record. CPL 510.10(1); *People ex rel. Kon*, 2025 WL 2955737, at *1. The CPL presumes a securing order will provide that a defendant be released on their own recognizance unless a person is charged with an enumerated "qualifying offense" under CPL 510.10(4). *See* CPL 510.10(3). But even "where . . . a defendant is charged with a qualifying offense, the court has discretion to release them on their own recognizance or under non-monetary conditions; fix bail; order non-monetary conditions in conjunction with fixing bail; or, when the qualifying offense is a felony, remand them to custody." *People ex rel. Kon*, 2025 WL 2955737, at *2 (citations omitted).

The CPL further provides that a criminal defendant may seek modification of a securing order at any time by making an application. CPL 510.20(1). This is true even for defendants detained on Rikers because they are unable to pay bail. *See id.* Many events may trigger modification of a securing order. For example, a securing order may need to be modified when a criminal charge that establishes bail eligibility (i.e., a "qualifying offense" charge) is dismissed. *See* CPL 510.20(3). In addition, the CPL permits a criminal defendant to "present evidence" for the court's consideration to support an application for modification of a securing order that would result in release from Rikers. CPL 510.20(2)(b). That evidence could involve changes in a defendant's "activities and history," such as obtaining community-based supports (for example, housing and mental health services) or changes in a defendant's "financial circumstances." CPL 510.10(1)(a), (f). The decision whether to grant or deny an application for modification of a securing order rests with the court, but that court needs to provide "substantive reasoning" for its determination. *People ex rel. Kon*, 2025 WL 2955737, at *3.

### B. Interplay between CPL 510.20 and CPL 730

CPL 730 provides the procedure for committing a defendant to OMH custody for competency restoration services. CPL 730 provides that a court may commit a defendant to OMH custody for inpatient hospitalization or, with district attorney consent, for outpatient competency

restoration programming. CPL 730.40(1), 730.50(1). However, Plaintiffs allege that the lack of any process for supplying the court (or district attorneys) with a qualified professional's assessment of a defendant's clinical suitability for outpatient restoration results in a system of hospitalization by default, causing Plaintiffs to be denied an opportunity for outpatient placement. Compl. ¶¶ 36-37. Plaintiffs challenge Defendants' failure to issue and implement any standards and procedures for assessments and recommendations by a qualified professional related to a suitable setting for a defendant's competency restoration services. Compl. ¶¶ 1, 9-10, 33-42.

As discussed above, defendants who are detained on Rikers Island due to inability to pay bail may move at any time to modify their securing order under CPL 510.20 based on new information and circumstances. To this end, for a detained defendant deemed incompetent under CPL 730 seeking to modify their securing order, the court may consider a qualified professional's recommendation that the defendant is eligible and appropriate for outpatient competency restoration in deciding whether to modify a securing order. But, to be clear, a qualified professional's recommendation for outpatient competency restoration could not independently *override* the court's securing order issued under CPL 510.10. Any decision to amend a securing order remains in the hands of the court. A qualified professional's recommendation is simply one piece of evidence, among others relevant to statutory factors set out in CPL 510.10, that a defendant could offer to the court at a hearing on a CPL 510.20 application to modify a securing order.

Finally, for people at liberty prior to a CPL 730 commitment order being issued, a qualified professional's recommendation for an outpatient competency restoration program provides the opportunity to *remain* in the community. In such circumstances, there would be no need to modify a securing order *at all* to allow participation in an outpatient competency restoration program. Named Plaintiff R.M., for example, was at liberty—living at home, working, and attending his court dates—at the time the criminal court ordered him to undergo a competency examination. *Id.* ¶¶ 14, 40. R.M. attended his examination appointment in the community as well. *Id.* ¶ 40. Because the court lacked the benefit of an evaluation from a qualified professional about R.M.'s ability to remain in the community for treatment (the relief Plaintiffs seek here), the court issued a CPL 730 commitment order for hospitalization and R.M. was remanded to Rikers to await competency restoration services. *Id.* ¶¶ 14, 26. He was detained over five months waiting for a hospital bed. *Id.* ¶¶ 14, 40.

                                              Respectfully yours,

                                              */s/ Elena Landriscina*
                                              Elena Landriscina